UNITED STATES DISTRICT COURT

FOR THE

MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION


ANDREW B SHEETS                                    Case # 2:24 – cv- 00495

Plaintiffs

V

JERRY PRESSELLER IN PERSONAL AND PROFESSIONAL CAPACITY

PUNTA GORDA DOWNTOWN MERCHANTS ASSOCIATION, INC.

DAVID JOSEPH LIPKER, IN PERSONAL AND PROFESSIONAL CAPACITY

CITY OF PUNTA GORDA,

 Defendants

---

## JUDGE ORDERED THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1. Pro Se Andrew B Sheets; respectfully files JUDGE ORDERED (#DOC 91) THIRD
   AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL.

2. PUNTA GORDA DOWNTOWN MERCHANTS ASSOCIATION, INC herein DMA

## Introduction

3. Plaintiff is Andrew Sheets, an independent journalist for over 12 years. Who's work involves obtaining public records, and exposing corruption, across various online platforms. Plaintiff documents this process extensively, including the use of a body camera. Good video footage tells its own story, it is unbiased and nonpolitical. Simply put Plaintiff publishes the truth.

## JURISDICTION AND VENUE

4. This court has subject matter over jurisdiction this matter pursuant to 28 U.S.C section 1331 and 1343(a)(3) as well as 42. U.S.C section 1983.

5. Venue in this judicial district and division is proper pursuant two 28 U.S.C. Section 1391(b) and M.D. Fla. Loc. R. 1.02

## PARTIES

6. ANDREW B SHEETS is a resident of Punta Gorda Florida, in Charlotte County during relevant times of this Complaint.

2

7. DAVID JOSEPH LIPKER is a Police officer for the City of Punta Gorda. In Punta Gorda Florida, in Charlotte County during relevant times of this Complaint.

8. JERRY PRESSELLER is a resident of Punta Gorda Florida, in Charlotte County during relevant times of this Complaint.

9. PUNTA GORDA DOWNTOWN MERCHANTS ASSOCIATION, INC. is a company, doing business in Punta Gorda Florida, in Charlotte County during relevant times of this Complaint.

10. DAVID JOSEPH LIPKER, JERRY PRESSELLER, PUNTA GORDA DOWNTOWN MERCHANTS ASSOCIATION, INC acting under the color of law in Punta Gorda Florida, in Charlotte County during relevant times of this Complaint.

11. City of Punta Gorda is a municipality; in Punta Gorda Florida, in Charlotte County during relevant times of this Complaint.

**Factual Allegations**

12. "Manage vb (16c) to exercise executive, administrative and supervisory powers. (Black's Law Dictionary 12th Edition."

13. In documents and news stories; Defendants DMA and PRESSELLER repeatedly demonstrate that they, wish to manage Punta Gorda Farmers market. Showing that their actions resemble tasks consistent with a state employee. The City contracting out the management of the Farmers market; does not relieve the city of its 1st amendment

mandates on a public sidewalk and in public spaces. State authority was given to

Defendants DMA and PRESSELLER in the form of being able to manage a city event.

14. The Farmers Market began in 2008 as a Temporary Conditional Use, and was being

managed by Punta Gorda Chamber of Commerce (DBA Downtown Merchants).  This

continued with annual renewals until 2013. In 2013 City Council approved a request that

the Farmers Market be allowed to continue without the requirement of an annual

Temporary Permit. No permits were required from 2013 to 2019. From 2013 to 2019

Punta Gorda Chamber of Commerce (DBA Downtown Merchants) was, collecting fees

from a large amount of vendors, and managing a large section of downtown without an

event permit; and paid no lease for the use of Downtown. From 2008 to 2013 no rent was

paid, fees were collected for the temporary conditional use permits.

## Conspiracy to violate plaintiff's 1st Amendment rights.

15. Exhibit X is a News article from Yoursun.com: "Crowd control now an option for PG

Farmers Market organizers" by Daniel Sutphin Staff writer March 26, 2019

16. In this article Defendant Presseller acknowledges that PUNTA GORDA DOWNTOWN

MERCHANTS ASSOCIATION, INC lease of downtown Punta Gorda would now make

the property private. The intention of this lease is to stop First Amendment activity on

public sidewalks and roadways. (traditional public forums) below are except from that
article.

    a.  "Up until now, the Punta Gorda Downtown Farmers Market has been a public
       space, free for anyone to come and go as they please.

    b.  While that remains the case for vendors and shoppers, solicitors, protesters and
       other non-patrons can now be removed by the Punta Gorda Police Department
       at the will of the Downtown Merchant's Association, the organization that
       oversees the market.

    c.  Last week, the City Council approved an annual lease with DMA for $750 per
       year that allows the association to maintain and run the market like any other
       festival or event in town. This makes the market area private under their
       supervision each Saturday until all cleanup of the market is complete." (Exhibit
       X)

    d.  "The police could do nothing (to remove people) as it was a public space,"
    e.  Presseller said. "This will help the DMA control the crowd as it is no longer
       (considered to be) a public space ... it now becomes private." (Exhibit X)

    f.  "In the past, Presseller said that they've had to deal with people soliciting at the
       market which has been a negative experience for shoppers." (Exhibit X)

17. It has been clearly established that soliciting is First Amendment speech, showing the
intention of the lease was to stop 1st amendment activity.

18. "The police could do nothing (to remove people) as it was a public space,"
    a.  Presseller said. "This will help the DMA control the crowd as it is no longer
       (considered to be) a public space ... it now becomes private." (Exhibit X)

b. "This is an event for the city," Presseller said. "It's not like we are renting a park for a weekend event. This is truly just a local weekly event held year round and we do not charge admission like your weekly park events do. " (Exhibit X)

c. "With the tremendous success and growth of the Market, the Downtown Merchants want to be able to manage the event more efficiently, just like other event organizers who utilize and rent a public park exclusively," said City Communications Manager Melissa Reichert. "By establishing a boundary area and annual rental fee, the market has exclusive use of the outlined area for the Farmers Market." (Exhibit X)

19. The news story shows the purpose of the lease is to suppress First Amendment activities. That the city of Punta Gorda did conspire with DMA and JERRY PRESSELLER to violate the 1st Amendment.

20. Punta Gorda's Farmers Market has been enclosed with cones and is consider City-owned, controlled, and leased property under "15-48 Control of Access to City-owned, Controlled and Leased Property"



a.

b. **Nexus/Joint action**

21. All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

22. Before 2019 DMA never paid any fees/ lease related to manage the Punta Gordas Farmers market. The annual lease of $750 per year was only put in place so that the City of Punta Gorda; conspiring with DMA and Defendant Presseller to stop the First Amendment activities in Public Forums the Punta Gorda farmers market.

23. It should also be noted there was no open competition or bidding process; in regards who would Manage public property in downtown Punta Gorda; in regards to the Farmers market. Furthermore through records requests and discovery it is apparent that, DMA and Defendant Presseller, did not go through the standard process in 2019, to throw an event with in the City of Punta Gorda.

24. DMA and Defendant Presseller never provided any type of Event application in 2019. The Event permit application is 4 pages that ask extensive in detail questions about the event.  Nonprofits are required to show certifications from the IRS and or state of Florida. Applications also must be notarized .  Furthermore additional applications Must be filled out.  Defendants would have also had to fill out sign permit, applications and special event safety checklist.  Contracts with, fire department, Police Department, facility and

7

maintenance division, public works department and an American with disabilities checklist. However the city of Punta Gorda required none of this from DMA and Defendant Presseller.

25. Instead the City Council called a meeting March 20,2019 and approved the Management of City Property. It should also be noted that's the annual rental rate of $750 would mean that the city would be coming out of pocket for expenses. Defendants never provided any type of documents that showed what triggered the city council meeting; in regards to the $750 annual lease of farmers market. DMA and Defendant Presseller could provide no document on why suddenly they were requesting to pay a lease.

26.

---

EXCERPT  EXCERPT  EXCERPT
CITY OF PUNTA GORDA, FLORIDA
REGULAR CITY COUNCIL MEETING MINUTES
WEDNESDAY, MARCH 20, 2019, 9:00 A.M.

**COUNCILMEMBERS PRESENT:**    Carey, Cummings, Matthews, Prafke, Wein

**CITY EMPLOYEES PRESENT:**    Kristin Simeone, Finance; Rick Keeney, Public Works; Tom Jackson, Utilities; Phil Wickstrom, Human Resources; Joan LeBeau, Urban Design; Pamela Davis, Police; Ray Briggs, Fire; City Attorney Levin; City Manager Kunik; City Clerk Smith

Mayor Prafke called the meeting to order at 9:00 a.m.

Invocation was given by Mr. John Burrage, followed by the Pledge of Allegiance.

**REGULAR AGENDA**

**Downtown Farmers Market**

Ms. Lisa Hannon, Zoning Official, explained the Downtown Farmers Market was asking to manage the market similar to special events held on public property. She stated staff researched various street rental rates and was recommending an annual rental rate of $750 for Council's consideration.

Councilmember Cummings **MOVED** approval of the annual rental rate as recommended by staff, **SECONDED** by Councilmember Wein.

**MOTION UNANIMOUSLY CARRIED.**

_____
Mayor

_____
City Clerk

---

27. The farmer's market took place every Saturday this means roughly 52 farmers markets were held in one year. PUNTA GORDA DOWNTOWN MERCHANTS ASSOCIATION, INC was paying roughly $14.00 a day to lease a massive section of Downtown Punta Gorda. The massive amount of Street closures, shows that the farmers

market could only take place with the help of the city of Punta Gorda. below is a picture

of the blockades.

28.



27.a. The closing of busy city streets, and the diversion of traffic would be

impossible without the Cities help. Also consider 88 vendors leaving at the

conclusion of the Farmers market would cause serious traffic issues. Large street

signs and police over site is necessary for this event to take place. 14 dollars for all

these services shows this is not a private event. DMA and Presseller do manage

but its still a collaboration with the city.  Below is a picture of the farmers market.

29.



30. To compare the city also rents out Gilchrist Park site:



31. Gilchrist park is not in a prime location like downtown Punta Gorda. You do not have
access to paved streets and public sidewalks. Even though Gilchrist park is an inferior
location it still rents at a rate of $500 per day with an additional $500 damage deposit for
a non profit.

**GILCHRIST PARK MULTI-DAY EVENT**

|  | Category 1 (nonprofit) | Category 2 (for profit) | Damage Deposit |
|---|---|---|---|
| Set-up Per day | $150.00 | $150.00 | N/A |
| Clean-up per day | $150.00 | $150.00 | N/A |
| Event per day – Open Space | $300.00 | $500.00 | $500.00 |
| Event per day – Exclusive Use* | $500.00 | $750.00 | $500.00 |

*Includes Open Space, Gazebo, Plaza, and Pavilions. Per City Council direction, closure of the Punta Gorda
Pathways harborwalk at this park is not permitted for any reason.

32. For a member of the public to rent a similar location; for the same amount of time, that
DMA leased downtown Punta Gorda would cost $26,000. With security deposit $52,000.

33. City of Punta Gorda is funding the Farmers market. $14.00 a day would not cover the city
manpower to close the roads, or provide the needed maintenance.

34. The City Council meeting minutes for March 20th 2019 also shows that the DMA was
looking to manage the market in a similar fashion to special events held on public
property. Management is an action of a city employee, if the farmers market was truly a
private party event, then that private party would have to fund all costs.  It should be

noted that's the Annual lease that DMA received is a massively discounted rate. The
management was extremely lucrative for DMA. Indeed 88 vendors x $40.00 x 52 weeks
= $183,040

35. Florida law states there should have been a open competition for this contract.


   a.  287.132   Legislative intent with respect to integrity of public contracting and
       purchasing process.

                1.  (1)   The procedures of public entities for determining with whom
                    they transact business exist to secure for the public the benefits of
                    free, fair, and open competition among those persons whose
                    conduct reflects good citizenship.




36. JERRY PRESSELLER, and DMA. works with the City of Punta Gorda to have the
    Farmers market.


37. JERRY PRESSELLER is the manager of the DMA.


38. All events thrown in Punta Gorda must comply with the "Event Manual and Application"
    (Exhibit A) is Event Manual and Application


39. The events manual, shows that events are collaborations between the city and private
    individuals.  An event permit (temporary use permit), that allows the private party, some

control over the event, however the city also controls what the private party is allowed to do. The city also has control of the event itself. Private Party must comply with all 90 pages of the Event Manual;

40. On the event permit application (Exhibit A P. 31) it states the following. "Please be aware that approval does not exempt the applicant from any County, State or Federal criteria which may apply to such event or activity." Here the city clearly states that constitutional rights must continue to be honored.

41. On page 2 of the event Manual the City show exactly how intertwined they are with the Private party and the level of control the City has.

    i. "Remember, when you close a street, even for two or three blocks, this can affect traffic for miles around as
    ii. traffic is rerouted or turned away. The impact of a street closure is similar to dropping a pebble in a pond
    iii. with each concentric circle expanding.
    iv. Does your street closure block or impede access to police stations, fire stations, hospital emergency access routes, churches, schools, businesses, or residences?
    v. How does your event affect our public street system with regard to traffic routes or access? Are alternate
    vi. routes available to accommodate the numbers of people?"

42. Page 2 of the event manual also show Private party must comply with Americans with Disabilities act. "Have you planned to insure people with disabilities are able to obtain or enjoy the same goods, activities, services, and benefits that are available to other members of the public?"

43. Page 22 shows requirements placed on PUNTA GORDA DOWNTOWN MERCHANTS

ASSOCIATION, INC. to close the streets.

44. Streets/Traffic

45. If any street(s) or sidewalk(s) are to be closed, the applicant will coordinate with the Right-of-way Division,941-575-5010, to develop an approved maintenance of traffic (MOT) plan prior to submitting the event application for DRC review.

46. If road is FDOT Right-of-way, FDOT permit is required; the Zoning Division and Right-of-way Division will assist the applicant with the FDOT permit application.

47. The event organizer is required to provide a press release to the local media regarding any street closures or interruptions in the normal traffic flow.

48. The nexus/joint action test applies where "the state has so far insinuated itself into a

position of interdependence with the [private party] that it was a joint participant in the

enterprise.

49. JERRY PRESSELLER, and DMA are managing a joint  event with the city.

50. Maintenance of traffic requirements are provided by the City of Punta Gorda's public

works department.

51. Areas that were granted use were not surplus state property, but constituted a physically

and financially integral and, indeed, indispensable part of the CITY OF PUNTA

GORDA. Specifically, the public property used for the farmers market is Downtown

Punta Gorda.

52. The CITY OF PUNTA GORDA was a joint participant in the operation of the Farmers

Market.  JERRY PRESSELLER DMA have intertwined itself with the City of Punta

Gorda, the use permit between defendants, has given government powers, and authority

to  JERRY PRESSELLER and DMA to Manage public property in downtown Punta Gorda.

53. Specifically, JERRY PRESSELLER while clothed it in the authority of the state, and working under the color of law claims, the public roadways and public sidewalks of the City of Punta Gorda is now his own private property.

54. However this is not correct; the roadways and public sidewalks, are still under the control of the city of Punta Gorda. Defendant PRESSELLER and DMA does Manage the farmers market however that control is shared with the city of Punta Gorda.

55. It would be Impossible for Mr Presseller and DMA to hold the farmers market without the city of Punta Gorda since roads had to be closed down and traffic must be diverted.

53.a. On January 28, 2025, plaintiff visited the Punta Gorda Chamber of Commerce, where plaintiff was informed that the Punta Gorda Farmers Market is considered "one of the faces of Punta Gorda." According to the Chamber, the Farmers Market is viewed as a critical component of the community, playing a significant role in supporting and promoting local businesses.

53.b. This recognition underscores the Farmers Market's importance not only as a gathering place for residents and visitors but also as an essential driver of economic activity and vitality for the city of Punta Gorda. The statement from the Chamber highlights the integral connection between the market's operations and the broader success of local commerce, emphasizing its role as a key contributor to the community's identity and prosperity.

**Viewpoint discrimination**

56. JERRY PRESSELLER, did discriminate against ANDREW B SHEET's viewpoint, when
he arbitrarily enforced 15-48 and did trespass Plaintiff Sheets for his journalistic activities
of recording on public property (public sidewalks and roadways) where individuals were
conducting business. It should be noted there is no expectation of privacy under Florida
law when the conduct is related to business.

57. JERRY PRESSELLER did allow others to conduct identical journalistic activities,
without trespass warnings.

**<u>Punta Gorda City ordinance "15-48 Control of Access to City-owned, Controlled and
Leased Property" is a state action and was being enforced by JERRY PRESSELLER</u>**

58. The enforcement of 15-48  show JERRY PRESSELLER acting as a municipal employee
who is managing the Farmers market. This satisfies the "public function test".

59. In discovery Defendant Lipker uncovers, the moving force; for the trespass of Plaintiff an
Ordinance that was used that made Plaintiffs constitutional activity of filming illegal.

60. "15-48 Control of Access to City-owned, Controlled and Leased Property" is not
reasonable nor viewpoint neutral as applied to the Farmers Market. The location is a

public forum. Even if the location was a non public forum it is unconstitutional to ban

non disruptive activities. Furthermore 15-48 was applied arbitrarily to Plaintiff.


    a.  Below is from discovery in this case. This question was answer by Defendant

        DAVID JOSEPH LIPKER,

           i.  "20. Describe any instructions you received from supervisors, colleagues,

              or

          ii.  legal advisors regarding interactions with individuals engaged in filming

              or

        iii.  recording at the Farmers Market and city propertys, including instructions

        iv.  related to viewpoint-neutral enforcement.


           v.  ANSWER: Defendant is no longer employed with the City of Punta

              Gorda.

        vi.  Defendant is able to recall that there was a City ordinance that governed

       vii.  filming in a City building."

      viii.  (End of Discovery questions)


61. Sec. 15-48. Control of Access to City-owned, Controlled and Leased Property.

           i.  Under section (e)  Except within the City Council Chambers, conference

              rooms, and other locations in which a public meeting is being conducted

              pursuant to a public notice, it shall be unlawful and a violation of this

Ordinance, to record video and/or sound within City-owned, controlled, and leased property, without the consent of all persons whose voice or image is being recorded.

62. The ordinance is unconstitutional as applied to Plaintiffs filming on a public sidewalk.

63. In an earlier video JERRY PRESSELLER at the Farmers Market explains how video recording, is illegal because the property is leased property.

    a. JERRY PRESSELLER: "Is that camera going? Andy you know we don't allow that camera to be working."

    b. Plaintiff: "Really?"

    c. JERRY PRESSELLER: "Yes!"

    d. Plaintiff: "Seriously?"

    e. JERRY PRESSELLER: "Yes you know that"

    f. Plaintiff: " Are we in public? "

    g. JERRY PRESSELLER: " No, No we are not in public, this, I Rent this, I own this."



64.

65. Furthermore the incident report for the May 30th 2020 trespassing by Defendant Lipker; shows that plaintiff sheet was trespassed for videotaping.  The following is from that incident report.

    a. " I observed sheets and another male standing videotaping each other"

    b. " Mr. Sheets did not agree he was a problem or causing any type of disturbance. He admitted that he was videotaping but I did not witness any type of disturbance."

66. 15-48 was enforced arbitrarily. Defendant Lipker; should have asked all parties if consent was given for the videotaping. If consent is given videotaping is legal.

67. On 3/19/2022 Plaintiff was once again trespassed by Defendant JERRY PRESSELLER for filming.

68. The 911 call once again shows that Defendant JERRY PRESSELLER was enforcing 15-48; officers were immediately sent to trespass Plaintiff, for doing nothing more than filming.


69. The following is from 911 call from the Farmer market Manager JERRY PRESSELLER :

   a. Operator: "and what is he doing"

   b. Defendant JERRY PRESSELLER: " I am sorry"

   c. Operator: "and what is the male doing that you want to trespass ?"

   d. Defendant JERRY PRESSELLER: " He's taking pictures and talking to the merchants, trying to speak to the merchants. We have had trouble with this guy before.

   e. Operator: "ok not a problem we will send somebody over.


   f. Both Defendant JERRY PRESSELLER, and DAVID JOSEPH LIPKER, worked in concert to enforce 15-48(e).  It should be noted that in all these of these incidences JERRY PRESSELLER was acting on behalf of PUNTA GORDA DOWNTOWN MERCHANTS ASSOCIATION, INC, in the management of a public space, public sidewalks and roadways located downtown owned by the city of Punta Gorda.

**5/30/2020**

70. Below unknown man is seen engaging in video recording, this individual was never

    trespassed. The Man with the mask around his chin is JERRY PRESSELLER.

71.



72. Further viewpoint discrimination shows that. JERRY PRESSELLER and PUNTA

    GORDA DOWNTOWN MERCHANTS ASSOCIATION, INC.  allowed NBC 2 to

engage in the journalistic activities of recording.



73. Above video shows News 2 did not ask anyone for consent when filming.

https://youtu.be/63u1tc67-4I?si=jXltpVtKQnSHw2Ri

74. You tube is filled with video of the Punta Gorda farmers market showing arbitrary enforcement of 15-48.

75. The following conversation was captured between Plaintiff SHEETS and Defendant JERRY PRESSELLER, this happens at time stamp, 9:50:27 on Mr. Sheet's body camera 5/30/2020.

76. Mr. JERRY PRESSELLER, states "this shows you the area that I rent from the city,  it's private property."

77. There some small talk between Presseller and Sheets. Then Mr. Sheets asks the following question.

78. Mr. Sheets; "why did you threaten me the other day for filming? When NBC was filming too."

79. Mr. JERRY PRESSELLER, "because we invited them, so we did not invite you."

80. Mr. Sheets; "OH, so if you see someone with a camera, you have to invite them to film and take a picture?"

81. Mr. JERRY PRESSELLER, "yes sir"

82. Mr. Sheets; " Really ?"

83. Mr. JERRY PRESSELLER, "yes sir"


84. At time stamp 9:55:53 JERRY PRESSELLER can be seen calling Punta Gorda Police Dept.

85.



86. At timestamp 9:57:42 Mr. Sheets tells Mr. PRESSELLER " So I was doing business here today. I was doing a story on if it's legal to record in public."

87. Mr. PRESSELLER replies "This is not Public so I Guess not."

88. At timestamp 9:58 PRESSELLER states: "I rent this space, and I able to choose who, I want here and who I don't. And I invite TV newscasters here,  For positive stories and obviously you don't do that. So I don't invite you here."

89.



90. At timestamp 10:02:16 DAVID JOSEPH LIPKER officer of Punta Gorda police dept,

    trespasses Plaintiff Sheets at the Direction of Mr. PRESSELLER, this stops Plaintiffs

    journalistic activities.


## **Municipality liability:**

### (Monell)


91. CITY OF PUNTA GORDA through its procedures, policies, practices, and customs,

    caused the violation of Mr. Sheets First Amendment rights. The CITY OF PUNTA

    GORDA, uses trespass warnings to stop Mr. Sheets speech. These trespass warnings, are

given by Punta Gorda city police officers, even though the activity that Mr. sheets is
engaged in is constitutionally protected.

92. Once Mr. sheets is given a trespass warning, if he returns to the location, Mr. Sheets will
be arrested. Once Mr. sheets is given a trespass warning, Plaintiff cannot revisit the area
for one year.

93. These trespass warnings effectively stop, Plaintiff's First Amendment activities at any
location he is trespassed at, and have a chilling effect on Plaintiff Sheets First
Amendment Rights. Mr. Sheets has been trespassed at least 10 times for First
Amendment activities.  CITY OF PUNTA GORDA and through its procedures, policies,
practices, and customs, uses unconstitutional trespass warning to chill First Amendment
Activities.

94. Not being able to challenge or appeal trespass warnings violates procedural due process.
The ease with which trespass warnings may be issued is particularly problematic here
because the trespass ordinance provides no procedural means for a warning-recipient to
challenge the warning. An evident process for such challenges has significant value in
avoiding mistakes. Even if it is impractical for the City to provide a pre-warning hearing
to "assure that there are reasonable grounds to support" the trespass warning, the City
must provide some post-deprivation procedure to satisfy the requirements of the Due
Process Clause.

## **Deliberate indifference for failure to train**

95. The City of Punta Gorda, allows some individuals to engage in journalistic activities,
while preventing other individuals from engaging, in identical journalistic activities. By
doing so the city of Punta Gorda is engaged in a custom of viewpoint discrimination. The
city of Punta Gorda has failed to train its officers, on viewpoint discrimination. A pattern
of similar constitutional violations, against Plaintiff Sheets by "untrained employees"
demonstrates a deliberate indifference for failure to train.  At the time of Mr. sheets
trespass for filming by Defendant LIPKER, a vendor at the farmers market was engaged
in identical conduct of filming.  Only Mr. sheets was trespassed, the vendor engaged in
Free Press activities with impunity.



96. This was not the only time Mr. sheets was a victim of viewpoint discrimination by
untrained employees who worked for the City of Punta Gorda.

97. On 10/01/2020 at 9:45 Plaintiff Andrew Sheets was trespassed by city employee DYLAN

J RENZ from Punta Gorda Public Safety Complex for filming. Below is from Plaintiff's

body worn camera.



98.

99. During the above 1ˢᵗ amendment violation; Mr. sheets was operating under an exemption

under 15-48 that allowed him to videotape law enforcement. However he was still

trespassed even though he never violated 15-48.

100.        The following is from that Trespass citation.

101.    "The city of Punta Gorda has rules of conduct based upon the city ordinance

regarding audio and video recording inside city facilities. (15-48 )"

102.    " I observe that Sheets was wearing a small camera on a lanyard around his neck

and that the red light on the camera was flashing."

103.    However other Journalists are allowed to film inside the Punta Gorda Public

Safety Complex and shows that untrained employees engaged in viewpoint

discrimination.

104.



**Punta Gorda police search for Charlotte Harbor Event Center vandals**



105.        https://youtu.be/d9q2LHkylno?si=clLSqeFcFCBlIMBg

106.



107.     The above bodycam from a Punta Gorda officer shows Plaintiff  receiving a ticket

violation in 2021 for the shirt plaintiff is wearing. Once again, an untrained officer,

employee of City of Punta Gorda, commits a viewpoint discrimination violation against

Plaintiff.


**(15-48 Violation of the 1ˢᵗ Amendment as applied to public sidewalks)**


108.     The City of Punta Gorda, ordinance 15-48 violates plaintiff's rights and any

individuals who conducts 1ˢᵗ amendment activities on public sidewalks. Ordinance 15-48

only allows for limited First Amendment activities; on   "city owned, controlled or leased

property."  This ordinance has effectively changed the designation of a public sidewalk

into a non public forum, by using some street cones and a lease.

109.     15-48 "must be reasonable in light of the purpose served by the forum." And it is

not.

110.     Sec. 15-48. Control of Access to City-owned, Controlled and Leased Property.
   a. (e) Except within the City Council Chambers, conference rooms, and other locations
   b. in which a public meeting is being conducted pursuant to a public notice, it shall
   c. be unlawful and a violation of this Ordinance, to record video and/or sound
   d. within City-owned, controlled, and leased property, without the consent of all
   e. persons whose voice or image is being recorded.

111.     Individuals are only allowed to record public meetings pursuant to a public notices.
112.     However City of Punta Gorda has made it illegal to record without consent everywhere else.

113.     Sec. 15-48. Control of Access to City-owned, Controlled and Leased Property
      1. Consistent with decisions of the U.S. Supreme Court, public access to areas
   b. within enclosed facilities owned, controlled, and leased by the City of Punta
   c. Gorda may be restricted depending upon whether such areas are classified as
   d. "designated public forum", "limited designated public forum," or "nonpublic
   e. forum".

   f.  PUNTA GORDA DOWNTOWN MERCHANTS ASSOCIATION, INC.

      g.  (Monell)

114.     Deliberate Indifference for Failure to Train

115.     DMA failed to train its manager JERRY PRESSELLER on view point

discrimination and the right to free speech on a public sidewalk.

116.     Two incidences show a Deliberate Indifference for Failure to Train

117.     We have already covered the incidence on 5/30/20202.

118.     On 03/19/2022 Plaintiff was once again trespassed by the Punta Gorda Police

Department, at the direction  Defendant JERRY PRESSELLER manager of  DMA for

filming on the sidewalk. This shows a pattern of of Deliberate Indifference for Failure to

Train.

**CLAIM ONE:**

**42 U.S.C. § 1983**

**First Amendment – Violation Regarding Free Speech and Press**

**Viewpoint Discrimination**

**(JERRY PRESSELLER, and DAVID JOSEPH LIPKER)**

119.     All statements of fact set forth previously are hereby incorporated into this claim

as though set forth fully herein.

120.     Plaintiff's speech and expression on 5/30/2020 were related to matters of public concern.

121.     Defendant, DAVID JOSEPH LIPKER did trespass plaintiff Andrew Sheets for filming individuals, engaged in business from public sidewalks and roadways.

122.     Defendant DAVID JOSEPH LIPKER did not trespass others who were engaged in identical activity.

123.     Defendant JERRY PRESSELLER, acting as the manager of THE DOWNTOWN MERCHANTS COMMITTEE OF PUNTA GORDA, INC, did call City of Punta Gorda police, to trespass plaintiff for engaging in identical Free Press activity as others who were also filming on the sidewalk at the farmers market in downtown Punta Gorda.

124.     Defendant JERRY PRESSELLER, acting as the manager of THE DOWNTOWN MERCHANTS COMMITTEE OF PUNTA GORDA, INC, did not call City of Punta Gorda police, to trespass others for engaging in identical Free Press activity.

125.     Andrew sheets filming individuals, engaged in business from public sidewalks and roadways, is Free Press activity protected by the First amendment.

126.    Defendant JERRY PRESSELLER, acting as the manager of THE DOWNTOWN

MERCHANTS COMMITTEE OF PUNTA GORDA, INC, and DAVID JOSEPH

LIPKER decision to trespass Andrew Sheets for filming from sidewalks and public

roadways is a viewpoint restriction on speech.


127.    Defendant JERRY PRESSELLER, acting as the manager of DMA and DAVID

JOSEPH LIPKER's decision to trespass Andrew Sheets for filming from sidewalks and

public roadways had a chilling effect on Plaintiffs First amendment activities.


128.    The actions of Defendant's JERRY PRESSELLER, acting as the manager of

DMA and DAVID JOSEPH LIPKER occurred while each was acting under color of

State law.


129.    Defendants JERRY PRESSELLER, acting as the manager of DMA and DAVID

JOSEPH LIPKER's conduct violated clearly established rights belonging to Andrew

Sheets of which reasonable persons in Defendants' position knew or should have known.


130.    Defendants JERRY PRESSELLER, acting as the manager of DMA and DAVID

JOSEPH LIPKER engaged in this conduct intentionally, knowingly, willfully, wantonly,

maliciously, and in reckless disregard of Plaintiff's constitutional rights.

**CLAIM TWO:**

**42 U.S.C. § 1983**

**First Amendment – Violation Regarding Free Press**

**Prior Restraint**

131.    (JERRY PRESSELLER, , and DAVID JOSEPH LIPKER)

132.    All statements of fact set forth previously are hereby incorporated into this claim

as though set forth fully herein.

133.    Plaintiff's speech and expression on 5/30/2020 were related to matters of public

concern.

134.      Defendant JERRY PRESSELLER, acting as the manager of DMA, did call City of Punta Gorda police, to trespass plaintiff Andrew Sheets for filming individuals engaged in business from public sidewalks and roadways.

135.      Defendant, DAVID JOSEPH LIPKER did trespass plaintiff Andrew Sheets for filming individuals engaged in business from public sidewalks and roadways.

136.      Defendants, JERRY PRESSELLER, acting as the manager of DMA, and Defendant Lipker working together in concert and did prevent Plaintiff Sheets from collecting video, and or information for future journalistic stories.

137.      Andrew Sheets filming individuals, engaged in business from public sidewalks and roadways, is Free Press activity protected by the First amendment.

138.      Defendant JERRY PRESSELLER, acting as the manager of DMA did call police on Mr. sheets, for filming from the public sidewalk.  JERRY PRESSELLER decision to call the police on Mr.  Andrew Sheets for filming, from sidewalks and public roadways did cause a prior restraint on Mr. Sheets Free Press.

139.      Defendant LIPKER did trespass Mr. sheets filming from the public sidewalk.

140.    Defendant LIPKER decision to trespass Andrew Sheets for filming from
sidewalks and public roadways, did cause a prior restraint on Mr. Sheets Free Press.  This
prior restraint did last for one year.

141.    Defendant JERRY PRESSELLER, acting as the manager DMA decision to call
the police and Defendant Lipker's decision to trespass Andrew Sheets for filming from
sidewalks and public roadways had a chilling effect on Plaintiffs Free Press.

142.    The actions of Defendant JERRY PRESSELLER, THE DOWNTOWN
MERCHANTS COMMITTEE OF PUNTA GORDA, INC, DAVID JOSEPH LIPKER
occurred while each was acting under color of State law.

143.    Defendants JERRY PRESSELLER, manager of DMA, and DAVID JOSEPH
LIPKER's conduct violated clearly established rights belonging to Andrew Sheets of
which reasonable persons in Defendants' position knew or should have known.

144.    Defendants JERRY PRESSELLER, manager of DMA, and DAVID JOSEPH
LIPKER engaged in this conduct intentionally, knowingly, willfully, wantonly,
maliciously, and in reckless disregard of Plaintiff's constitutional rights.

**CLAIM THREE:**

**42 U.S.C. § 1983**

**First Amendment – Violation Regarding Free Speech and Press.**

**Retaliation**

**(JERRY PRESSELLER, and DAVID JOSEPH LIPKER)**

145.    All statements of fact set forth previously are hereby incorporated into this claim
as though set forth fully herein.

146.    Plaintiff's speech and expression on 5/30/2020 were related to matters of public
concern.

147.    Andrew Sheets filming individuals, engaged in business from public sidewalks
and roadways, is Free speech and Press activity protected by the First amendment.

148.    Defendants JERRY PRESSELLER, and DAVID JOSEPH LIPKER jointly and on
their own accord responded to Plaintiff's First Amendment-protected activity with
retaliation, including but not limited to; Mr. PRESSELLER acting as the manager of
DMA calling the police, and  DAVID JOSEPH LIPKER's Trespassing Mr. Sheets.

149.     Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of Mr. Sheets First Amendment rights.

150.     The decision by Mr. PRESSELLER acting as the manager of DMA , calling the police and  DAVID JOSEPH LIPKER's Trespassing Mr. Sheets, Defendants sought to punish Plaintiff for exercising his First Amendment rights and to silence Mr. Sheet's future speech and restrict Plaintiff's freedom of expression, and the future speech and Free Press.

151.     Defendant's retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment protected activity.

152.     Defendant's conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendants' position knew or should have known.

153.     Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

154.     The actions of Defendant's occurred while each was acting under color of State law.

**CLAIM FOUR:**

**42 U.S.C. § 1983**

**FIFTH AND FOURTEENTH Amendment – Procedural Due Process**

**Monell violations**

**(CITY OF PUNTA GORDA)**

155.     All statements of fact set forth previously are hereby incorporated into this claim

as though set forth fully herein.

156.     Andrew Sheets filming individuals, engaged in business from public sidewalks

and roadways, is Free speech and Press activity protected by the First amendment.

157.     Defendants CITY OF PUNTA GORDA through its procedures, policies, practices,

and customs is the moving force of the constitutional violation.

158.     CITY OF PUNTA GORDA through its procedures, policies, practices, and

customs, caused the violation of Mr. Sheets First Amendment rights. The CITY OF

PUNTA GORDA, uses trespass warnings to stop Mr. Sheets speech.

159.     The Defendant The City of Punta Gorda's employees have Trespassed Plaintiff

Sheet's at least 10 times violating his Liberty in the exercising his free press.

160.    Defendant CITY OF PUNTA GORDA Policy of issuing trespass warning for

Andrew Sheets constitutionally protected activity is a prior restraint on Free Press and

Free Speech that last for at least one year.


161.    Defendant's policy of allowing its employees to trespass Andrew Sheets for First

amendment activities had a chilling effect on Plaintiffs Free Press and free speech.


162.    Defendant's conduct violated clearly established rights belonging to Andrew

Sheets of which reasonable persons in Defendants' position knew or should have known.


163.    Defendant CITY OF PUNTA GORDA Policy Not being able to challenge or

appeal trespass warnings violates procedural due process.


164.    The Defendant's Trespass warning, provides no procedural means for a warning-

recipient to challenge the warning, both pre Trespass warning and post Trespass warning.

165.    The Defendant's Trespass warning does not have a exception for First

Amendment protected Activities.


166.    Defendant CITY OF PUNTA GORDA through its procedures, policies, practices,

and customs engaged in this conduct intentionally, knowingly, willfully, wantonly,

maliciously, and in reckless disregard of Plaintiff's constitutional rights.

## CLAIM FIVE:

## 42 U.S.C. § 1983

## FIRST AMENDMENT VIEWPOINT DISCRIMINATION

## Deliberate Indifference for Failure to Train

## Monell violations

167.     (CITY OF PUNTA GORDA, and DMA)

168.     All statements of fact set forth previously are hereby incorporated into this claim

as though set forth fully herein.

169.     On three separate occasions plaintiff sheets has been trespassed by untrained

Punta Gorda and  employees who engaged in viewpoint discrimination.

170.     On two separate occasions Plaintiff Sheets has been trespassed by DMA

171.     Defendants CITY OF PUNTA GORDA  and DMA through its procedures,

policies, practices, and customs is the moving force of the constitutional violation.

172.     On more than two occasions Mr. Sheets was trespassed for filming, however other

journalist were allowed to engage in filming with impunity, and were even invited to

film, showing an unconstitutional viewpoint discrimination.

173.     Mr. Sheets was also ticketed for wearing a shirt, and holding a protest banner with
the words "Fuck the police" from the public sidewalk by City of Punta Gorda employees.

174.     Untrained City employees and an untrained employee of DMA violated Mr. sheets
rights more than once, and show a pattern of similar constitutional violations. Defendant
city of Punta Gorda demonstrate, a deliberate indifference and a failure to train, it's
employees properly on viewpoint discrimination.

175.     Untrained city employees we're acting under the color of law.

176.     Defendant CITY OF PUNTA GORDA and DMA  through its procedures,
policies, practices, and customs engaged in conduct intentionally, knowingly, willfully,
wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

**CLAIM SIX:**

**42 U.S.C. § 1983**

**15-48 Violation of the 1ˢᵗ Amendment as applied to public sidewalks**

**Monell violations**

**( Defendant city of Punta Gorda)**

177.     All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

178.     Andrew Sheets filming individuals, engaged in business from public sidewalks and roadways, is Free speech and Press activity protected by the First amendment.

179.     15-48 is not reasonable nor viewpoint neutral as applied to sidewalks.

180.     CITY OF PUNTA GORDA through its procedures, policies, practices, and customs, (15-48) caused the violation of Mr. Sheets First Amendment rights.

181.     Plaintiff was stopped from filming on a public St.

182.     CITY OF PUNTA GORDA, through its procedures, policies, practices, and customs engaged in conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

183.     Defendant's policy of allowing to stop Andrew Sheets for First amendment activities had a chilling effect on Plaintiffs Free Press and free speech.

184.     Defendant's conduct violated clearly established rights belonging to Andrew

Sheets of which reasonable persons in Defendants' position knew or should have known.

**CLAIM SEVEN:**

**42 U.S.C. § 1983**

**Conspiracy to violate the First Amendment**

(JERRY PRESSELLER DMA and the City of Punta Gorda)

185.     All statements of fact set forth previously are hereby incorporated into this claim

as though set forth fully herein.

186.     Plaintiff filming from the sidewalks of downtown Punta Gorda is protected First

Amendment activity.

187.     Defendants conspired and to violate plaintiff First Amendment rights by

implementing a lease solely for the purpose of violating the 1st Amendment.

188.     After the implementation of the lease Defendants did violate Plaintiff's First

Amendment right.

189.    Defendants were acting under the color of law.

190.    Defendants conduct violated clearly established rights belonging to Andrew

Sheets of which reasonable persons in Defendants' position knew or should have known.

191.    Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly,

maliciously, and in reckless disregard of Plaintiff's constitutional rights.

PRAYER FOR RELIEF

Wherefore, Plaintiff Sheets entitled to compensatory damages from City of Punta Gorda and

THE DOWNTOWN MERCHANTS COMMITTEE OF PUNTA GORDA; compensatory

and punitive damages from the individual Defendants, JERRY PRESSELLER, DAVID

JOSEPH LIPKER and an award of reasonable costs.

JURY DEMAND

Plaintiff requests a trial by jury in this matter.

Respectfully submitted this 1/28/2025

Pursuant to Local Rule 3.01(g) of the Middle District of Florida, I certify that I conferred or attempted to confer in good faith with all opposing counsel regarding the matters raised. The only opposing counsel who responded was **Robert Eschenfelder**

, who stated that no conferral was required on this matter.

CERTIFICATE OF SERVICE I HEREBY CERTIFY that on this this 1/28/2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a true and correct copy of the foregoing trough a notice of electronic filing to:

**Robert M. Eschenfelder**

Trask Daigneault, LLP

1001 S. Ft. Harrison Avenue, Suite 201

Clearwater, FL 33756

7277330494

Fax: 7277332991

Email: rob@cityattorneys.legal

**David Jadon**

Roper, Townsend & Sutphen, P.A.

255 S. Orange Ave.,

Suite 750

Orlando, FL 32801

407-897-5150

Email: djadon@roperpa.com

**Asher Knipe**

Knott Ebelini Hart

Suite 302

1625 Hendry St.

Ft Myers, FL 33901

239/334-2722

Fax: 239/334-1446

Email: aknipe@knott-law.com

**William Maxwell Blades Ferris**

1625 Hendry Street

Suite 301

Fort Myers, FL 33901

239-470-2051

Email: wferris@knott-law.com

**/s/ ANDREW BRYANT SHEETS**

**ANDREW BRYANT SHEETS**

11408 pepperdine st

Punta gorda,fl,33955

941-916-2259

Email: **federallawsuit4freespeech@gmail.com**