UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISiON

ANDREW BRYANT SHEETS,

    Plaintiff,

v.                                     Case No. 2:24-CV-00495-JLB-KCD

JERRY PRESSELLER, IN PERSONAL
AND PROFESSIONAL CAPACITY;
PUNTA GORDA DOWNTOWN
MERCHANTS COMMITTEE, INC.;
OFFICER DAVID JOSEPH LIPKER,
IN PERSONAL AND
PROFESSIONAL CAPACITY; AND
CITY OF PUNTA GORDA,

    Defendants.

_____/

## CITY OF PUNTA GORDA'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendant, City of Punta Gorda ("City"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully requests this Honorable Court enter an order dismissing the Plaintiff's third amended complaint with prejudice.

## Background

Plaintiff has filed a third amended complaint (Doc. 97). Plaintiff has now brought the following claims against the City:

- Count Four: Fifth and Fourteenth Amendment violations under 42 U.S.C. §1983

1

- Count Five: viewpoint discrimination via a "deliberate indifference for failure to train" theory under 42 U.S.C. §1983

- Count Six: violation of the First Amendment as applied to public sidewalks vis-à-vis ordinance 15-48 under 42 U.S.C. §1983

- Count Seven: conspiracy under 42 U.S.C. §1983

## Grounds for Motion

1. Plaintiff states no facts to illustrate a constitutional deprivation or procedural due process violation.

2. Plaintiff does not state sufficient facts to illustrate the City was on notice of a failure to train theory under *Monell* and the claim is improperly merged with the Farmers Market.

3. Plaintiff's claim for a violation of the First Amendment under ordinance 15-48 is confusing and inapplicable to the instant case.

4. Plaintiff does not state sufficient facts to suggest a conspiracy and it should additionally be barred by the statute of limitations.

## Memorandum of Law

### I. Standard

In evaluating the sufficiency of a complaint, the court must accept well pleaded facts as true and resolve them in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche,* 144 F.3d 732, 735 (11th Cir. 1998). However, if the plaintiff

can prove no set of facts that would entitle him to relief, then the defendant is entitled to a dismissal for failure to state a claim. Although the plaintiff is not held to a very high standard on a Rule 12(b)(6) motion, the plaintiff is still required to "allege some specific factual bases for those conclusions or face dismissal" of the claim. *Jackson v. Bellsouth*, 372 F.3d 1250, 1263 (11th Cir. 2004). Moreover, in reviewing a motion to dismiss, the court need only accept *well pleaded facts* and reasonable inferences drawn from those facts. Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a rule 12(b)(6) dismissal. *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003).

## II. Video Evidence

A district court must generally limit its consideration of a motion to dismiss the pleadings and any exhibits attached to it. *Grossman v. Nationsbank, N.A.*, 225 F. 3d 1228, 1231 (11th Cir. 2000). If the parties present, and the court considers, evidence outside the pleadings, the motion to dismiss must be converted into a motion for summary judgment. *Finn v. Gunter*, 722 F. 2d 711, 713 (11th Cir. 1984). However, there are two exceptions to this rule of conversion: (1) the incorporation by reference doctrine and (2) judicial notice. *Tellabs, Inc. v. Makor Issues & Rtds., Ltd.*, 551 U.S. 308, 322 (2007). Under the incorporation-by-reference doctrine, a court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) "the plaintiff refers to certain

3

documents in the complaint," (2) those documents are "central to the plaintiff's claim," and (3) the documents' contents are undisputed. *Horsley v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir. 2002). Recently, the Eleventh Circuit held that even if a document is not referred to in the complaint, it can be considered under the incorporation-by-reference doctrine so long as the other two requirements are met. *Johnson v. City of Atlanta*, Case No. 22-11359, 2024 WL 3384936, * (11th Cir. July 12, 2024). Evidence is "undisputed" in this context if its authenticity is unchallenged. *Id*. While the rule traditionally has applied to documentary evidence, the Eleventh Circuit has expanded its application to video footage as well. *Baker v. City of Madison, Alabama*, 67 F. 4th 1268, 1277 (11th Cir. 2023).

Relevant to the issues here, Plaintiff's Third Amended Complaint references several videos, but most importantly, one that documents his interactions with Defendants Presseller and Lipker. (See e.g., Doc. 97, Pg. 6 ¶20(a); Pg. 19 ¶63-64; Pg. 22 ¶71; Pg. 23 ¶75 – Pg. 26 ¶90; Pg. 28 ¶95). A copy of that video is attached as Exhibit 1.

a. *Procedural Due Process Violations*

It is not clear what theory Plaintiff is proceeding with in Count Four – either the Fifth or Fourteenth Amendment. However, Plaintiff's main thrust seems to be centered on his complaint that there was no procedural means for him to challenge the trespass warning, both pre and post. (Doc. 97, Pg. 43, ¶164).

4

Plaintiff cannot prevail under a claim via the Fifth Amendment. The Due Process Clause of the Fifth Amendment applies only to the federal government. *See Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 8 (1st Cir. 2007) ("The Fifth Amendment Due Process Clause ... applies 'only to actions of the federal government—not to those of state or local governments.' ") (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001)); *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) ("The [Due Process Clause of the] Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor."); *cf. Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law." (internal quotation marks omitted)); *Buxton v. Plant City*, 871 F.2d 1037, 1041 (11th Cir. 1989) ("The fifth amendment to the United States Constitution restrains the federal government, and the fourteenth amendment, section 1, restrains the states, from depriving any person of life, liberty, or property without due process of law."). For these reasons, Plaintiff fails to state a proper claim for relief.

The Fourteenth Amendment provides that no state may deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend. XIV.

The Due Process Clause requires that an individual be given appropriate notice an opportunity to be heard before such a deprivation. *Catron v. City of St. Petersburg*, 658 F. 3d 1260, 1266 (11th Cir. 2011). That said, the notice and hearing "may be postponed until after the deprivation has occurred." *Id*.

For a procedural due process claim under 1983, a plaintiff must prove 1) a deprivation of a constitutionally protected liberty or property interest, 2) state action, and 3) constitutionally inadequate process. *Id*. The Eleventh Circuit has recognized a "constitutionally protected liberty interest to be in parks or on other city lands of their choosing that are open to the public generally." *Id*. But an individual may forfeit his liberty interest by committing trespass or other violations of the law. *Id*. (*citing City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994)). If there is a forfeit of liberty interest there is no deprivation. *Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115 *1128 (M.D. Fla. Nov. 23, 2019).

As a threshold matter, Plaintiff's complaint does not state sufficient facts to support a claim that there was constitutionally inadequate process. He merely states that he could not challenge the warning, without a description of the process, or whether he actually attempted to challenge it. He states that he has been trespassed "at least 10 times" but does not provide details to identify these incidents. (Doc. 97, Pg. 42, ¶159). Claiming something simply does not make it so. These are nothing more than conclusory allegations and are not supported with

6

sufficient facts.[1] The Eleventh Circuit has regularly upheld dismissal of such conclusory factual assertions on due process claims. *See e.g., In re Watkins*, 2024 WL 4119035 *3 (11th Cir. 2024) (upholding dismissal of Plaintiff's complaint which alleged procedural due process violations regarding trespass warnings for lack of sufficient factual allegations). Therefore, Plaintiff has failed to meet the third prong of the test.

As it relates to the first prong of the test, Plaintiff must show that he was deprived of a constitutionally protected liberty or property interest. While there is a general right to access public lands, that right is only under the "ordinary conditions in which the property is made available to the public. *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266-67 & n.5 (11th Cir. 2011). Clearly, a privately organized and managed Farmers Market that operates once a week for a limited period of time is not an "ordinary condition." Creation of speech is not the type of activity for which streets and parks have been used "time out of mind," and therefore it cannot be said that they have "immemorially been held in trust" for such activity. *Price v. Garland*, 45 F.4th 1059, 1072 (D.C. Cir. 2022). There is no historical right of access to government property in order to create speech. *Id.*[2]

---

[1] Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a rule 12(b)(6) dismissal. *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003).

[2] Plaintiff's claim to be an "independent journalist" also does not afford him any special rights or treatment. S*ee Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 946 (7th Cir. 2015) ("the First

7

As the Fourth Circuit Court of Appeals noted in *United Auto Workers, Local No. 5285 v. Gaston Festivals, Inc.*:

> "Were we to hold that the incident power to exclude others from public property during the course of a limited, permitted use transformed the permit holder int a state actor, softball teams on the Mall in Washington D.C. would be constitutionally obliged to afford due process to those not allowed to play on the particular field at the same time. Every family that barbecues on a public park would theoretically be barred from excluding uninvited guests on constitutionally suspect grounds. The local church could no longer use public facilities to hold events for fear of violating the Establishment Clause. Every picnic, wedding, company outing, meeting, rally, and fair held on public grounds would be subject to constitutional scrutiny merely because the organizer had 'been granted exclusive use of city facilities … as well as authority to determine who may use those … facilities and what they may say while on the public fora.'"

43 F.3d 902, 911 (4th Cir. 1995).

Taken to its logical conclusion, if private events are allowed to exclude other people, it is not leap of logic to conclude that they may summon the aid of the police to assert their rights to their temporary use of that public fora. As laid out in Officer Lipker's motion to dismiss, there was arguable probable cause for the trespass warning. Police often ask individuals to temporarily leave public spaces, *Salmon v. Blesser*, 802 F.3d 249, 253 (2d Cir. 2015), and doing so does not create a constitutional violation. *Peery v. City of Miami*, 977 F.3d 1061, 1071 (11th Cir. 2020).

---

Amendment provides no special solicitude for members of the press."). "The right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17 (1965).

Contrary to Plaintiff's assertion otherwise, the First Amendment does not give carte blanche for any behavior he wants in a public setting. *See e.g.*, *Watkins v. Central Broward Regional Park*, 799 Fed. Appx. 659 (11th Cir. 2020) (appellant's trespass from public park for singing an anti-gay song not a First Amendment violation).

Further, any burden on the Plaintiff's alleged First Amendment activity was incidental, as he was still allowed to occupy the sidewalks around the Farmers Market, as explained to him by Officer Lipker. *See also Wright v. City of St. Petersburg, Florida,* 833 F.3d 1291, 1297 (11th Cir. 2016) (finding application of city ordinance was not impermissible burden as appellant was still allowed to enter sidewalks around park while trespass order was in effect). Moreover, there was no ban on Plaintiff's access or his ability to film from the same streets and sidewalks in downtown Punta Gorda – he simply could not do so for the handful of hours the Farmers Market occupied them once a week.

    b. *Deliberate Indifference for Failure to Train*

Defendant has brought a *Monell* claim against both the City and the Merchants Association. Plaintiff claims that on "three separate occasions" he has been trespassed by untrained "Punta Gorda and employees."[3] (Doc. 97, Pg. 44,

---

[3] Defendant is not entirely sure if Plaintiff means employees of Punta Gorda or employees of another organization *and* Punta Gorda.

¶169). He also claims that he has been trespassed by the Merchants Association twice. (Pg. 44, ¶170). He then asserts that both the City and DMA had procedures, policies, practices and customs that were the moving force of the constitutional violation. (Pg. 44, ¶171). The City cannot tell from this claim what policy is alleged to have caused the constitutional violation or which employees this claim references since it is jointly applied to the City and the Farmers Market.

Regardless, Plaintiff fails to show his constitutional rights were violated under a *Monell* theory. The allegations of Plaintiff's complaint fall far short of the necessary proof to establish a causal link between a constitutional violation and a custom, policy or practice of the City of Punta Gorda. It is clear that the Plaintiff relied upon the standard necessary to evaluate the potential liability of an individual officer versus *Monell* liability asserted against a governmental entity under §1983. The law cannot be clearer that a §1983 claim cannot be asserted against a governmental entity under the theory of respondeat superior. A governmental entity cannot be sued under §1983 for injuries that are caused solely by its employees. *Monell v. Department of Social Services*, 98 S. Ct. 2018, 2037-2038 (U.S. 1978). "In order to prevail on a civil rights action under §1983, a plaintiff must show he or she was deprived of a federal right by a person acting under color of law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). A government agency may be liable pursuant to §1983 if the agency has a "policy or custom that

caused the injury." *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989). In order for a government agency to be liable under §1983, a plaintiff must show that the policy that caused the injury was the "moving force behind the constitutional deprivation." *Farred v. Hicks*, 915 F.2d 1530, 1532-33 (11th Cir. 1990).

In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 1 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton,* 489 U.S., at 388. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.,* at 389.

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 410 (1997). Thus, when city policymakers are on actual or constructive notice that a particular

11

omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.,* at 407. The city's "'policy of inaction' " in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton,* 489 U.S., at 395. (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities ...." *Id.,* at 392.

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Bryan Cty.,* 520 U.S., 397 at 409. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.,* at 407. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

The Plaintiff provides no evidence of training materials or course work utilized by City employees. He provides no evidence that City officials were on

12

notice of any violation. In his attempt to illustrate that the City has acted with deliberate indifference, the Plaintiff provides factually distinct, unverifiable, and self-serving snippets in his complaint. None of these are conclusively a "violation." Plaintiff's other examples that he uses to show a failure to train are not persuasive. (Pgs. 29-32). They occur after the date alleged in the complaint, and thus cannot be the moving force behind any alleged constitutional violation. They also involve distinct factual circumstances such as filming in the interior of the Punta Gorda Safety Complex[4] and allegedly receiving a ticket for wearing a t-shirt.

Even assuming these were improper, these isolated incidents do not establish a pattern, nor are they similar enough to the alleged violation here – trespass for filming at a private event - to have put the City on notice of a need to train. *See Connick v. Thompson*, 563 U.S. 51, 62-3 (2011) (noting that previous *Brady* violations by prosecutors were insufficient to put the district attorney's office on notice of the need to train because "those incidents [were] not similar to the violation at issue"); *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1329 n.21 (11th Cir. 2015).[5]

   c. *City Ordinance 15-48 Has No Application to the Instant Case*

---

[4] The Eleventh Circuit has concluded the ban on filming is appropriate in the interior of the Punta Gorda Public Safety Complex. *See Hoffman v. Delgado*, 2025 WL 25856 (11th Cir. 2025).

[5] The Middle District has previously told the Plaintiff that these examples are not enough to plead a deliberate indifference claim against the City. *Sheets v. Jimenez*, 2024 WL 5090058 (Dec. 12, 2024).

Frankly, the City is not sure where Plaintiff came up with the idea that city ordinance 15-48 was the moving force behind his trespass warning. Plaintiff appears to mention in a cursory fashion a response by Officer Lipker from discovery that there was a city ordinance that governed filming *in a city building*.[6] (Doc. 97, Pg. 18). Unfortunately for the Plaintiff, the Farmers Market is not a city building. It is outside.[7] It is a privately run event. The Plaintiff has provided *no evidence* in his complaint that 15-48 was the reason for his trespass. This is likely because there is none. He makes only conclusory assertions.

Plaintiff's complaint is also confusing, as he asserts that Presseller enforced 15-48 against him, not Officer Lipker. (Doc. 97, Pg. 17, ¶56). His entire conversation with Presseller does not mention any such city ordinance. It is not clear then how a private citizen, Presseller, could 1) enforce such a policy, and 2) how the action of a private citizen is then transferred to the City. Plaintiff has not shown that the policy was the moving force behind any trespass and subsequently this claim should be dismissed. Unsupported conclusions of law or of mixed fact and law

---

[6] Officer Lipker did not identify the policy.

[7] Frankly, Plaintiff knows the ordinance applies only to the interior of City buildings. He has already challenged the ordinance once before. *See Sheets v. Punta Gorda*, 415 F. Supp. 3d 1115 (M.D. Fla. Nov. 23, 2019). He is challenging it again in *Sheets v. Jimenez*, 2024 WL 5090058 *4 (Dec. 12, 2024). The Eleventh Circuit has also concluded that 15-48 applies to the *interior of buildings* and is reasonable. *See Hoffman v. Delgado*, 2025 WL 25856 *3 (11th Cir. 2025).

have long been recognized not to prevent a rule 12(b)(6) dismissal. *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003).

### d. *Plaintiff Fails to Show Any Conspiracy*

The final count against the City involves a purported conspiracy to violate his First Amendment rights by the City, the Merchants Association, and Presseller. (Doc. 97, Pg. 187, ¶187). A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right. *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir.1998). "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990) (citations omitted). A plaintiff claiming a § 1983 conspiracy must prove the defendants "reached an understanding" to violate the plaintiff's constitutional rights. *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir.1992) ("[T]he linchpin for conspiracy is agreement.").

The City disputes there was any violation of the Plaintiff's rights. Regardless, the Plaintiff has not and cannot show that the Defendants ever reached an agreement to violate his rights. A hearsay news article and an unofficial unsigned

15

document from a city council meeting do not show any agreement to violate any rights of the Plaintiff. The city council document (Doc. 97, Pg. 9) does not mention the word "lease," does not mention the Plaintiff, does not mention the "First Amendment," "rights," or any other term that the Plaintiff can point to support his claim for conspiracy. Likewise, the article does not mention the Plaintiff and does not state there was any sort of agreement to violate the civil rights of anyone.[8] Plaintiff readily admits he does not know what triggered the meeting. (Doc. 97, Pg. 8, ¶25). Moreover, Officer Lipker is not mentioned in the claim for conspiracy, so it is not clear how the City is vicariously liable for the actions of Presseller or the Merchants Association.

The City agrees with Presseller that Plaintiff's latest allegation is barred by the statute of limitations and does not relate back. (Doc. 98, Pg. 19). Plaintiff's attached document from the city council indicates a date of March 20, 2019. Plaintiff's first complaint (which made no mention of conspiracy) was filed May 29, 2024. Plaintiff filed more than four years after the alleged date of the

---

[8] Assuming *arguendo* that somehow this Court finds that Presseller and the Merchants Association were state actors, then any claim for conspiracy would be barred by the intracorporate conspiracy doctrine. "[T]he intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir.2000).

16

conspiracy. The alleged trespass then occurred on May 30, 2020. The first complaint contains no facts to even suggest a conspiracy.

This claim, therefore, does not arise from the same conduct, transaction, or occurrence as the original claim. *See Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003) (per curiam) (stating that Congress "did not inten[d] for [Rule 15(c)] to be so broad to allow an amended pleading to add an entirely new claim based on a different set of facts" and that the untimely claim must not have arisen from "separate conduct or a separate occurrence in 'both time and type.' ") (citations omitted).

## CONCLUSION

Plaintiff has now had four attempts to properly plead a claim for relief. His latest attempt continues to plead vague claims, insufficient facts, and fails to show any violation of his alleged rights. It is nothing but another attempt to sue the City of Punta Gorda and its employees. Defendant requests the Court dismiss the Plaintiff's complaint with prejudice.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), undersigned counsel and Plaintiff, Mr. Andrew B. Sheets, Pro Se., have conferred in good faith via email on February 4,

2025 regarding the relief requested herein. Mr. Sheets is opposed to the relief requested in this motion.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this this 11th day of February, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a true and correct copy of the foregoing trough a notice of electronic filing to: Andrew B. Sheets, *Pro se*, 11408 Pepperdine Street, Punta Gorda, FL 33955 and e-mailed: federallawsuit4freespeech@gmail.com; Robert M. Eschenfelder, 1001 S. Ft. Harrison Avenue, Ste. 201, Clearwater, FL 33756, rob@cityattorneys.legal; jennifer@cityattorneys.legal, *Attorney for Defendant Jerry Presseller;* Asher E. Knipe, Esquire and William M. Ferris, Esquire, Knott, Ebelini, Hart, 1625 Hendry Street, Suite 301, Fort Myers, FL 33901, aknipe@knott-law.com; wferris@knott-law.com; jmock@knott-law.com, *Attorneys for Defendant Punta Gorda Downtown Merchants Association, Inc.*

                                                      */s/ David R. Jadon*
                                                      David R. Jadon, Esquire
                                                      Florida Bar No.: 1010249
                                                      Roper, Townsend & Sutphen, P.A.
                                                      255 S. Orange Avenue, Suite 750
                                                      Orlando, FL 32801
                                                      Telephone: (407) 897-5150
                                                      Facsimile: (407) 897-3332
                                                      Primary: djadon@roperpa.com
                                                      Secondary: lramirez@roperpa.com
                                                      Attorney for Defendants David Joseph Lipker and City of Punta Gorda