UNITED STATES DISTRICT COURT

FOR THE

MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION


ANDREW B SHEETS                          Case # 2:24-cv-495

Plaintiffs

V

JERRY PRESSELLER IN PERSONAL AND PROFESSIONAL CAPACITY

PUNTA GORDA DOWNTOWN MERCHANTS ASSOCIATION, INC.

DAVID JOSEPH LIPKER, IN PERSONAL AND PROFESSIONAL CAPACITY

CITY OF PUNTA GORDA,

 Defendants

_____

RESPONSE TO DEFENDANT JERRY PRESSELLER'S DISPOSITIVE MOTION TO DISMISS THIRD AMENDED COMPLAINT

I Andrew Sheets Pro Se, Respond to DEFENDANT JERRY PRESSELLER'S DISPOSITIVE MOTION TO DISMISS THIRD AMENDED COMPLAINT(Doc # 98)


AC herein JUDGE ORDERED THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL (Doc# 97)

MTD here in DEFENDANT JERRY PRESSELLER'S DISPOSITIVE MOTION TO DISMISS THIRD AMENDED COMPLAINT (Doc # 98)

## Legal standard

Complaints brought pro se are "held to a less stringent standard than pleadings drafted by attorneys and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011)

Previously, we have held that we accept allegations in a complaint as true and construe them in the light most favorable to the plaintiff. *White v. Lemacks*, 183 F.3d 1253, 1255 (11th Cir.1999). In *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

Third Amended Complaint is not a shotgun pleading. Amended complaint needed; more details to show the intertwine between private parties and the city of Punta Gorda. Plaintiff is not a well seasoned attorney. Plaintiff to the best of his ability has added facts in the pleadings that do show defendant was engaged in a state action while conspiring to violate plaintiff's rights. During these violations defendant was closed in the authority of the state and acting under the color of law. Plaintiff does not fail to state a claim.

## Count I: Viewpoint Discrimination

86. At timestamp 9:57:42 Mr. Sheets tells Mr. PRESSELLER " So I was doing business here today. I was doing a story on if it's legal to record in public."

87. Mr. PRESSELLER replies "This is not Public so I Guess not."

88. At timestamp 9:58 PRESSELLER states: "I rent this space, and I able to choose who, I want here and who I don't. And I invite TV newscasters here, For positive stories and obviously you don't do that. So I don't invite you here."(AC ¶ 86-88)

"Indeed, though the Supreme Court has never categorically prohibited restrictions based on viewpoint, it has come close: "Discrimination against speech because of its message is presumed to be unconstitutional." " *Moms For Liberty - Brevard Cnty. v. Brevard Pub. Schs.*, 118 F.4th 1324, 1332 (11th Cir. 2024)

" '[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others,' " *Lamb's Chapel v. Center Moriches Union Free School Dist.,* 508 U.S. 384, 394, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993),"

*Matal v. Tam*, 137 S. Ct. 1744, 1757 (2017)

"Under Florida Statutes § 810.09(1), a person who remains on property where notice against entering or remaining is given, commits the offense of trespass. If the offender defies an order to leave, personally communicated to the offender by the owner of the premises or by an authorized person, the offender commits a misdemeanor of the first degree. The statute defines "authorized person" as the "owner, his or her agent, or a community association authorized as an agent for the owner, or any law enforcement officer whose department has received written authorization from the owner, his or her agent, or a community association…to communicate an order to leave the property…" In this case, the operative pleading does not allege facts sufficient to establish Presseller owned the street at issue, or was a community association, or was the property owner's (City's) agent. Therefore, if Plaintiff was trespassed on the date in question, it was not by the power of Mr. Presseller."(MTD 8,9)

Plaintiff was trespassed for filming.

In an earlier video JERRY PRESSELLER at the Farmers Market explains how video recording, is illegal because the property is leased property.

    a.  JERRY PRESSELLER: "Is that camera going? Andy you know we don't allow that camera to be working."(AC ¶63)

Furthermore the incident report for the May 30ᵗʰ 2020 trespassing by Defendant Lipker; shows that plaintiff sheet was trespassed for videotaping.  The following is from that incident report.

    a." I observed sheets and another male standing videotaping each other"

    b." Mr. Sheets did not agree he was a problem or causing any type of disturbance. He admitted that he was videotaping but I did not witness any type of disturbance."(AC ¶ 65)

Next, the Third Amended Complaint attempts to make Mr. Presseller a state actor because, when "acting as the manager of the Downtown Merchants Committee…[he] did call…police" (¶ 123) due to the conduct of Plaintiff while at the farmers market. Plaintiff does not allege that Presseller took any actual enforcement action. Rather, he admits, "these trespass warnings were given by Punta Gorda City police officers" (¶ 91), and specifically, that officer "Lipker did trespass plaintiff…" (¶ 121). Again at ¶ 126 Plaintiff alleges that Mr. Presseller was "acting as the manager of the Downtown Merchants Association", and that officer Lipker made the "decision to trespass" Plaintiff "for filming from sidewalks." It is, of course, undisputed that Mr. Presseller did eventually summon police on the day in question due to Plaintiff's disruptive conduct. However, as the Magistrate Judge in this case has already observed, a private person calling the police does not transform that person into a state actor. (Dkt. 73, pg. 7, citing Williams v. Town of White Hall, Ala., 450 F. Supp. 2d 1300, 1308 (M.D. Ala. 2006)). (MTD p.9,10)

A middle district of Alabama case has no binding on this court. Plaintiff cites clearly established law; that shows if Defendant is acting within the authority of the state then Defendant is a state

actor. Defendant clearly shows he has control over public sidewalks and streets in the City of Punta Gorda.

Defendant was acting as a manager in control of sidewalks and the public streets of downtown Punta Gorda. No different then a city employee who manages an Event Center, or even the city manager.

"The dissent in the Court of Appeals offered three grounds for holding that service rendered by a prison doctor — whether a permanent member of a prison medical staff, or under limited contract with the prison — constitutes action under color of state law for purposes of § 1983. First, the dissent concluded that prison doctors are as much "state actors" as are other prison employees, finding no significant difference between Doctor Atkins and the physician-employees assumed to be state actors in *Estelle*, and in *O'Connor* v. *Donaldson*, 422 U.S. 563 (1975)."

*West v. Atkins*, 487 U.S. 42, 47 (1988)

"Contrary to respondent's intimations, the fact that a state employee's role parallels one in the private sector is not, by itself, reason to conclude that the former is not acting under color of state law in performing his duties. "If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity . . . ." *Griffin* v. *Maryland*, 378 U.S. 130, 135 (1964). "

*West v. Atkins*, 487 U.S. 42, 57 n.15 (1988)

"However this is not correct; the roadways and public sidewalks, are still under the control of the city of Punta Gorda. Defendant PRESSELLER and DMA does Manage the farmers market however that control is shared with the city of Punta Gorda."(AC ¶54)

**"nexus/joint"**

One of the reasons why the Plaintiff has made his third amendment complaint so **Fact heavy and specific** is to show the "symbiotic relationship." between the city and Defendant.

> The Supreme Court has cautioned that this analysis will be heavily fact specific. *See Burton* , 365 U.S. at 722, 81 S.Ct. 856 ("Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."). Because the joint action test applies to a broad array of factual scenarios, some cases nominally interpreting this test have used language that is unhelpful in its application to other scenarios. For example, the Supreme Court has said that private liability will attach where the state "so far insinuated itself into a position of interdependence with the [private entity] that it was a joint participant in the enterprise." *Jackson* , 419 U.S. at 357–58, 95 S.Ct. 449. *Jackson* said that the state and private entity must form a "symbiotic relationship."

*Charles v. Johnson*, 18 F.4th 686, 696 (11th Cir. 2021)

In Johnson "the nonobvious involvement of the State in private conduct" is destroyed. The third amended complaint shows obvious involvement of the state in the private conduct of defendant. It shows that the state may even have more involvement and more control that Defendant himself.

It should also be noted that's the approval of the event permit, directed defendant to honor county , state and federal law. Federal law is the United states constitution.

39. The events manual, shows that events are collaborations between the city and private individuals.  An event permit (temporary use permit), that allows the private party, some control over the event, however the city also controls what the private party is allowed to do. The city also has control of the event itself. Private Party must comply with all 90 pages of the Event Manual;

40. On the event permit application (Exhibit A P. 31) it states the following. "Please be aware that approval does not exempt the applicant from any County, State or Federal criteria which may apply to such event or activity." Here the city clearly states that constitutional rights must continue to be honored.

41. On page 2 of the event Manual the City show exactly how intertwined they are with the Private party and the level of control the City has.

     i.  "Remember, when you close a street, even for two or three blocks, this can affect traffic for miles around as

    ii.  traffic is rerouted or turned away. The impact of a street closure is similar to dropping a pebble in a pond

   iii.  with each concentric circle expanding.

   iv.  Does your street closure block or impede access to police stations, fire stations, hospital emergency access routes, churches, schools, businesses, or residences?

    v.  How does your event affect our public street system with regard to traffic routes or access? Are alternate

   vi.  routes available to accommodate the numbers of people?"

42. Page 2 of the event manual also show Private party must comply with Americans with Disabilities act. "Have you planned to insure people with disabilities are able to obtain or enjoy the same goods, activities, services, and benefits that are available to other members of the public?"

43. Page 22 shows requirements placed on PUNTA GORDA DOWNTOWN MERCHANTS ASSOCIATION, INC. to close the streets.

44. Streets/Traffic

45.If any street(s) or sidewalk(s) are to be closed, the applicant will coordinate with the Right-of-way Division,941-575-5010, to develop an approved maintenance of traffic (MOT) plan prior to submitting the event application for DRC review.

46.If road is FDOT Right-of-way, FDOT permit is required; the Zoning Division and Right-of-way Division will assist the applicant with the FDOT permit application.

47.The event organizer is required to provide a press release to the local media regarding any street closures or interruptions in the normal traffic flow.


48.The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise.

49.JERRY PRESSELLER, and DMA are managing a joint  event with the city.


50.Maintenance of traffic requirements are provided by the City of Punta Gorda's public works department.

51.Areas that were granted use were not surplus state property, but constituted a physically and financially integral and, indeed, indispensable part of the CITY OF PUNTA GORDA. Specifically, the public property used for the farmers market is Downtown Punta Gorda.


52.The CITY OF PUNTA GORDA was a joint participant in the operation of the Farmers Market.  JERRY PRESSELLER DMA have intertwined itself with the City of Punta Gorda, the use permit between defendants, has given government powers, and authority to  JERRY PRESSELLER and DMA to Manage public property in downtown Punta Gorda. (AC ¶39-52)


*Charles v. Johnson*, 18 F.4th 686, 696 (11th Cir. 2021) show two other Clearly established scenarios under which defendant shows that he is a state actor.

Of the three broad tests for state action, only the "nexus/joint action test" is adequately argued by Charles. Under the joint action test, the Supreme Court has held that a "willful participant in joint activity with the State or its agents" is a state actor. *See United States v. Price* , 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). At least three threads of cases have arisen under this doctrine. First, a private citizen can be held liable when he or she conspires with a state actor to deprive the plaintiff of his constitutional rights. *See id.* ; *Adickes v. S. H. Kress & Co.* , 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Second, the state can make an active choice to partner with a private entity in a way that can impart liability. *See Jackson v. Metro. Edison Co.* , 419 U.S. 345, 357–58, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) ; *Gilmore v. City of Montgomery* , 417 U.S. 556, 574, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974) ; *Burton v. Wilmington Parking Auth.* , 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Last, a private citizen can take up the mantle of sovereignty through the *ex parte* use of civil or criminal processes. *See Lugar* , 457 U.S. at 924, 102 S.Ct. 2744 ; *Bendiburg v. Dempsey* , 909 F.2d 463, 469 (11th Cir. 1990).

*Charles v. Johnson*, 18 F.4th 686, 696 (11th Cir. 2021)


The Third amended complaint shows the city and defendant did conspire to not only violate plaintiff's rights but also used their symbiotic relationship to "impart liability" and did use a criminal process. Defendant even went as far asked to do a press release. This is an admission and shows that the symbiotic relationship was a willful plan to violate clearly established rights of Plaintiff.


13.In documents and news stories; Defendants DMA and PRESSELLER repeatedly demonstrate that they, wish to manage Punta Gorda Farmers market. Showing that their actions resemble tasks consistent with a state employee. The City contracting out the management of the Farmers market; does not relieve the city of its 1st amendment mandates on a public sidewalk and in public spaces. State authority was given to Defendants DMA and PRESSELLER in the form of being able to manage a city event.

14.The Farmers Market began in 2008 as a Temporary Conditional Use, and was being managed by Punta Gorda Chamber of Commerce (DBA Downtown Merchants).  This continued with annual renewals until 2013. In 2013 City Council approved a request that the Farmers Market be allowed to continue without the requirement of an annual Temporary Permit. No permits were required from 2013 to 2019. From 2013 to 2019 Punta Gorda Chamber of Commerce (DBA Downtown Merchants) was, collecting fees from a large amount of vendors, and managing a large section of downtown without an event permit; and paid no lease for the use of Downtown. From 2008 to 2013 no rent was paid, fees were collected for the temporary conditional use permits.

### Conspiracy to violate plaintiff's 1ˢᵗ Amendment rights.

15.Exhibit X is a News article from Yoursun.com: "Crowd control now an option for PG Farmers Market organizers" by Daniel Suphin Staff writer March 26, 2019

16.In this article Defendant Presseller acknowledges that PUNTA GORDA DOWNTOWN MERCHANTS ASSOCIATION, INC lease of downtown Punta Gorda would now make the property private. The intention of this lease is to stop First Amendment activity on public sidewalks and roadways. (traditional public forums) below are except from that article.

    a.  "Up until now, the Punta Gorda Downtown Farmers Market has been a public space, free for anyone to come and go as they please.

    b.  While that remains the case for vendors and shoppers, solicitors, protesters and other non-patrons can now be removed by the Punta Gorda Police Department at the will of the Downtown Merchant's Association, the organization that oversees the market.

    c.   Last week, the City Council approved an annual lease with DMA for $750 per year that allows the association to maintain and run the market like any other festival or event in town. This makes the market area private under their supervision each Saturday until all cleanup of the market is complete." (Exhibit X)

    d.   "The police could do nothing (to remove people) as it was a public space,"

    e.   Presseller said. "This will help the DMA control the crowd as it is no longer (considered to be) a public space ... it now becomes private." (Exhibit X)

    f.   "In the past, Presseller said that they've had to deal with people soliciting at the market which has been a negative experience for shoppers." (Exhibit X)

17. It has been clearly established that soliciting is First Amendment speech, showing the intention of the lease was to stop 1st amendment activity.

18. "The police could do nothing (to remove people) as it was a public space,"

    g.   Presseller said. "This will help the DMA control the crowd as it is no longer (considered to be) a public space ... it now becomes private." (Exhibit X)

    h.   "This is an event for the city," Presseller said. "It's not like we are renting a park for a weekend event. This is truly just a local weekly event held year round and we do not charge admission like your weekly park events do. " (Exhibit X)

i. "With the tremendous success and growth of the Market, the Downtown Merchants want to be able to manage the event more efficiently, just like other event organizers who utilize and rent a public park exclusively," said City Communications Manager Melissa Reichert. "By establishing a boundary area and annual rental fee, the market has exclusive use of the outlined area for the Farmers Market." (Exhibit X)

19.The news story shows the purpose of the lease is to suppress First Amendment activities. That the city of Punta Gorda did conspire with DMA and JERRY PRESSELLER to violate the 1st Amendment. (AC ¶ 13-19)

## **Count II Prior Restraint**

Presseller has already established that he is not a state actor.(MTD p.13) amended complaint and clearly established law shows defendant is a state actor.

But Presseller would also note that Plaintiff's attempt to allege his "filming" activities constitute First Amendment speech is unsupported by the averments in the Third Amended Complaint.(MTD p.13)

"The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest. " *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000)

He contends that his intention was to engage in "journalistic activities", but his pleading does not establish that he is a journalist, nor what Plaintiff may have done or said while "filming" at the market. Walking around filming does not, itself, 'convey a message that can be readily understood by those who view it.'(MTD P.14)

86. At timestamp 9:57:42 Mr. Sheets tells Mr. PRESSELLER " So I was doing business here today. I was doing a story on if it's legal to record in public."

87. Mr. PRESSELLER replies "This is not Public so I Guess not."

88. At timestamp 9:58 PRESSELLER states: "I rent this space, and I able to choose who, I want here and who I don't. And I invite TV newscasters here, For positive stories and obviously you don't do that. So I don't invite you here."(AC ¶86-88)

The 3rd amendment complaint clearly shows the filming was related to a news story. Defendant's reply in ¶ 88 shows that defendant readily understood it was a news story.

## Count III First Amendment Retaliation

"To prove a First Amendment retaliation claim under § 1983, a plaintiff must show: "(1) that the plaintiff engaged in constitutionally protected speech, (2) that the defendant's retaliatory conduct adversely affected the protected speech, (3) and that the retaliatory action caused the adverse effect on plaintiff's speech." Turner v. Williams, 65 F.4th 564, 579 (11th Cir. 2023) (internal quotation marks omitted" (MTD P.16)

"Since Plaintiff brings this count under § 1983, and that law requires state action, dismissal must be granted."(MTD 17) Arguments in this response show defendant is a state actor.

> "A state can not, consistently with the freedom of religion and the press guaranteed by the First and Fourteenth Amendments, impose criminal punishment on a person for distributing religious literature on the sidewalk of a company-owned town contrary to regulations of the town's management, where the town and its shopping district are freely accessible to and freely used by the public in general, even though the punishment is attempted under a state statute making it a crime for anyone to enter or remain on the premises of another after having been warned not to do so."

*Marsh v. Alabama*, 326 U.S. 501, (1946)

Presseller next notes that, as set out in the caselaw detailed in the Count II discussion above, Plaintiff's mere act of "filming" as described in the Third Amended Complaint was not protected First Amendment speech.(MTD P.17)

> Applying this test, we have held that, to prevail on a First Amendment claim of unlawful retaliation, an employee must make three showings. *See Bryson v. City of Waycross*, 888 F.2d 1562, 1565-66 (11th Cir. 1989). First, the employee must show that the speech was made as a citizen on a matter of public concern.

*Green v. Finkelstein*, 73 F.4th 1258, 1263 (11th Cir. 2023)

The question of whether you can film on a public sidewalk is undoubtedly a matter of public concern.

Apart from those points, § 1983 liability requires a plaintiff to establish a municipal policy or custom. Plaintiff's Third Amended Complaint fails to make that allegation, and fails to allege any facts establishing such a policy or custom.(MTD P.17)

Municipal liability is usually associated with a Monell claim. Plaintiff is confused as why defendant is arguing municipal liability?  Claim Three is not a Monell Claim.

### <u>Count Seven Conspiracy to Violate First Amendment</u>

DEFENDANT'S STATUTE OF LIMITATIONS ARGUMENT IS MERITLESS;

Defendant argues that the conspiracy claim is time-barred. However, a § 1983 conspiracy claim accrues when the last overt act in furtherance of the conspiracy occurs. *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996). The trespass warning, issued as part of the conspiracy, occurred within the limitations period. Therefore, the claim is timely.

On 3/19/2022 Plaintiff was once again trespassed by Defendant JERRY PRESSELLER for filming.(AC ¶67)

On 03/19/2022 Plaintiff was once again trespassed by the Punta Gorda Police Department, at the direction Defendant JERRY PRESSELLER manager of DMA for filming on the sidewalk. This shows a pattern of of Deliberate Indifference for Failure to Train.(AC ¶118)

## In conclusion

For the reasons stated above: Plaintiff asked the honorable court to deny the motion to dismiss in its entirety and allow plaintiff to move forward so a jury can decide punitive damages.

Respectfully submitted this 2/6//2025 Pursuant to Local Rule 3.01(g) of the Middle District of Florida, I certify that I conferred or attempted to confer in good faith with all opposing counsel regarding the matters raised. The lawyers stated that no conferral was required on this matter.

/s/ ANDREW BRYANT SHEETS

ANDREW BRYANT SHEETS

11408 pepperdine st Punta gorda,fl,33955 941-916-2259

Email: federallawsuit4freespeech@gmail.com

CERTIFICATE OF SERVICE I HEREBY CERTIFY that on this this 2/26/2025, I

electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a true and correct copy of the foregoing trough a notice of electronic filing to:

Robert M. Eschenfelder

Trask Daigneault, LLP

1001 S. Ft. Harrison Avenue, Suite 201

Clearwater, FL 33756

7277330494

Fax: 7277332991

Email: rob@cityattorneys.legal

David Jadon

Roper, Townsend & Sutphen, P.A.

255 S. Orange Ave.,

Suite 750

Orlando, FL 32801

407-897-5150

Email: djadon@roperpa.com

Asher Knipe

Knott Ebelini Hart

Suite 302

1625 Hendry St.

Ft Myers, FL 33901

239/334-2722

Fax: 239/334-1446

Email: aknipe@knott-law.com

William Maxwell Blades Ferris

1625 Hendry Street

Suite 301

Fort Myers, FL 33901

239-470-2051

Email: wferris@knott-law.com