January 18, 2025 VIA E-MAIL

David R. Jadon, Esquire Florida Bar No.: 1010249 Roper, Townsend & Sutphen, P.A. 255 S. Orange Avenue, Suite 750 Orlando, FL 32801 Telephone: (407) 897-5150 Facsimile: (407) 897-3332 Primary: djadon@roperpa.com Secondary: smiddleton@roperpa.com

Re: Case No. 2:24-CV-00495-JLB-KCD

Dear Mr. JADON, I am in receipt of your responses to the PLAINTIFF 2ND interrogatories,request to produce AND ADMITTANCE in this matter, which you provided . Pursuant to the conferral requirement of Rule 3.01(g) of the Local Rules of the Middle District of Florida, I am writing to address several issues with your responses in an attempt to confer and avoid court intervention.

Here are the reasons why I need these for discovery with case law and time constraints

 PLAINTIFFS CITYS 2ND Requests to Produce
1.In a federal civil rights lawsuit alleging **viewpoint discrimination**, you must show that the actions of the defendants were **not viewpoint-neutral** and were instead motivated by disagreement with your perspective or the content of your speech. The requested materials are vital for proving this claim because they could reveal:

1. **Selective Enforcement**:

   - Policies or communications showing that others engaged in similar filming or recording activities at the Farmer's Market were not trespassed or otherwise restricted.
   - Evidence demonstrating that enforcement actions were targeted specifically against your viewpoint.

2. **Motivation and Intent**:

   - Internal emails, memos, or other communications might demonstrate a bias against your viewpoint or reveal discriminatory intent.

3. **Pattern of Conduct**:

   - Records of prior complaints or actions against individuals engaging in expressive activities could establish a pattern of selective enforcement or retaliation.

4. **Policy or Custom Under Monell**:

   - If suing a municipal entity under **Monell v. Department of Social Services, 436 U.S. 658 (1978)**, the materials could show that the city or its agents had a policy, custom, or practice of targeting specific viewpoints, which is essential for establishing liability.

---

**Verified Case Law**

1. **Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37 (1983)**:

   - The Supreme Court held that restrictions on access to public forums must be viewpoint-neutral and reasonable. Policies or actions that target specific viewpoints violate the First Amendment.

2. **Reed v. Town of Gilbert, 576 U.S. 155 (2015)**:

   - Established that content-based or viewpoint-based restrictions on speech are subject to strict scrutiny and are presumptively unconstitutional.

3. **Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819 (1995)**:

   - Held that government entities may not discriminate against speech based on its viewpoint, even in the administration of public facilities.

4. **Monell v. Department of Social Services, 436 U.S. 658 (1978)**:

   - Municipal liability can attach if a government policy, custom, or practice causes constitutional violations, including viewpoint discrimination.

5. **Iancu v. Brunetti, 588 U.S. ___ (2019)**:

   - Reaffirmed the principle that the government may not restrict speech merely because it disagrees with the viewpoint expressed.

---

ANSWER THE QUESTION

3.In your federal civil rights lawsuit, internal communications are critical to establishing evidence of **viewpoint discrimination**, retaliation, or other unconstitutional actions by the defendants. These records can help you prove the following:

1. **Discriminatory Intent**:

   - Emails, text messages, or other internal correspondence might reveal that the defendants' actions toward you were motivated by bias or disagreement with your viewpoint.
   - Defendants may have discussed specific instructions to issue trespass warnings or other restrictions targeting you.

2. **Policy or Practice Evidence**:

   - Under **Monell v. Department of Social Services, 436 U.S. 658 (1978)**, municipal liability requires proof that the unconstitutional actions resulted from an official policy, custom, or practice.
   - Internal communications could reveal the existence of such a policy or practice, including directives targeting individuals based on their speech or activities.

3. **Retaliation for Protected Activities**:

   - First Amendment retaliation claims require showing that your protected activities were a substantial or motivating factor for the defendants' adverse actions.
   - Communications about your interactions at public spaces or events may contain evidence linking your constitutionally protected activities (e.g., filming, advocacy) to the retaliatory conduct.

4. **Pretext for Actions**:

- Defendants may claim that their actions were viewpoint-neutral or based on legitimate reasons (e.g., security concerns). Internal communications might expose these claims as pretextual by showing selective enforcement or discriminatory motives.

5. **Timeline and Consistency**:

- Communications can establish when decisions were made and whether actions were consistent with stated policies, exposing potential inconsistencies or irregularities.

---

**Verified Case Law Supporting Your Request**

1. **Monell v. Department of Social Services, 436 U.S. 658 (1978)**:

   - Municipal liability requires evidence that unconstitutional actions were caused by an official policy or custom. Internal communications may reveal such policies.

2. **Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977)**:

   - In First Amendment retaliation claims, plaintiffs must show that protected activity was a substantial or motivating factor for the adverse action. Communications about your activities are critical for proving this link.

3. **Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003)**:

   - Established guidelines for requesting and producing electronic communications, emphasizing the importance of ESI in modern discovery.

4. **Reed v. Town of Gilbert, 576 U.S. 155 (2015)**:

   - Reinforced that content-based or viewpoint-based restrictions on speech are subject to strict scrutiny. Communications may demonstrate that enforcement was not viewpoint-neutral.

5. **Anderson v. City of Taylor, 2016 WL 5851894 (E.D. Mich. Oct. 6, 2016)**:

   - Highlighted the importance of internal communications in proving selective enforcement and discriminatory intent in a First Amendment case.

ANSWER THE QUESTION

5. **Reasons for Requesting Video/Audio Documentation**
   1. **Proving Violations of First Amendment Rights:**

      - Video/audio recordings can demonstrate how government employees or law enforcement responded to your First Amendment activities, such as protesting, recording public officials, or engaging in free speech at the Farmers Market or government buildings.
      - These recordings may reveal if there were unconstitutional restrictions, selective enforcement of rules, or retaliatory actions based on the content of your speech.

   2. **Establishing Patterns of Conduct:**

- If City of Punta Gorda employees or law enforcement have a documented history of suppressing First Amendment activities, recordings can help establish a pattern or practice of unconstitutional behavior, supporting your claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

3. **Impeaching Witness Credibility:**

- Video/audio evidence may contradict testimony from city employees, law enforcement, or security personnel, strengthening your credibility and undermining their defense.

4. **Objective Evidence of Conduct:**

- Courts often view video/audio evidence as more reliable than witness recollections, making it critical for establishing facts about your interactions.

5. **Qualified Immunity Defense:**

- If officials argue qualified immunity, video/audio recordings can provide clear evidence that their conduct violated clearly established law, as in *Scott v. Harris*, 550 U.S. 372 (2007), where a video refuted the plaintiff's version of events.

---

**Relevant Case Law Supporting Your Request**

1. **Access to Evidence for Constitutional Claims:**

- *Brady v. Maryland*, 373 U.S. 83 (1963): Establishes that suppression of evidence favorable to the plaintiff violates due process. If the recordings are relevant to proving a constitutional violation, they must be disclosed.

2. **Government Retaliation for First Amendment Activity:**

- *Hartman v. Moore*, 547 U.S. 250 (2006): Retaliation against a person for exercising their First Amendment rights is actionable, and evidence like video/audio is critical to establish retaliatory intent.

3. **Use of Video Evidence to Prove or Disprove Facts:**

- *Scott v. Harris*, 550 U.S. 372 (2007): Video evidence was used to determine the objective facts of a Fourth Amendment claim, demonstrating its importance in resolving factual disputes in civil rights cases.

4. **Liability for Policies or Practices under Monell:**

- *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Demonstrates that municipalities can be held liable for constitutional violations caused by their policies or practices, which may be evident in recordings.

5. **Right to Record Public Officials:**

- *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011): Recording public officials is a clearly established First Amendment right, and recordings may prove whether your right was unlawfully restricted.

FROM 2019 TO PRESENT,ANSWER THIS

6. **Reasons for Requesting Documents on Viewpoint Neutrality**
   1. **To Demonstrate a Violation of the First Amendment:**

   - Viewpoint neutrality is a core principle of the First Amendment. Public forums, such as those at the Farmers Market, cannot discriminate based on the content or viewpoint of speech (*Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995)).
   - If the City implemented or applied policies in a way that favored or disfavored certain viewpoints, this documentation will directly support your claim of unconstitutional behavior.

   2. **Evidence of Unconstitutional Policies or Practices:**

   - If the City's policies or the Farmers Market guidelines fail to explicitly enforce viewpoint neutrality or if legal guidance deviated from constitutional standards, this could establish municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

   3. **Proving Intent or Knowledge:**

   - Documents or communications may reveal whether City officials intentionally implemented policies to suppress certain viewpoints or knowingly allowed unconstitutional practices, which could strengthen your claims of First Amendment retaliation or discrimination.

   4. **To Impeach the City's Defense:**

   - The City may argue that their actions were neutral and unrelated to viewpoint. Internal communications, legal opinions, or guidance could undermine this claim by showing intentional bias or selective application of policies.

   5. **Qualified Immunity Defense:**

   - If individual officials assert qualified immunity, these records could provide evidence that they acted unreasonably or contrary to clearly established law on viewpoint neutrality.

   6. **Establishing Forum Analysis:**

   - The type of forum (traditional, limited public, or nonpublic) determines the level of permissible restriction on speech. Legal guidance on forum designation and related policies can clarify whether restrictions imposed at the Farmers Market align with the correct standard of review (*Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983)).

---

**Relevant Case Law Supporting Your Request**

   1. **Viewpoint Discrimination Is Prohibited:**

- *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995): Established that the government may not regulate speech based on its viewpoint in a public forum or a limited public forum.
- *Reed v. Town of Gilbert*, 576 U.S. 155 (2015): Held that content-based regulations are presumptively unconstitutional and subject to strict scrutiny.

2. **Municipal Liability for Unconstitutional Policies:**

- *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities can be held liable for constitutional violations caused by official policies, practices, or decisions.

3. **First Amendment Retaliation:**

- *Hartman v. Moore*, 547 U.S. 250 (2006): Demonstrates the necessity of proving a causal link between adverse action and the exercise of First Amendment rights.

4. **Standards for Public Forums:**

- *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983): Provides a framework for determining the type of forum and the permissible restrictions on speech.
- *Cornelius v. NAACP Legal Defense & Education Fund*, 473 U.S. 788 (1985): Discusses the necessity of viewpoint neutrality in public forums.

5. **Government Employee Guidance as Evidence:**

- *Connick v. Myers*, 461 U.S. 138 (1983): Internal policies and guidelines can be relevant in determining whether government actions infringe constitutional rights.


FROM 2019 TO PRESENT,ANSWER THIS


9.**Reasons for Requesting Comparative Case Documents**
   1. **Proving Inconsistent Enforcement and Viewpoint Discrimination:**

- Documents about complaints or actions against others for filming or recording can show whether the City or Farmers Market consistently applied its policies or selectively enforced them against you based on your viewpoint or content. Selective enforcement violates the First Amendment (*Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995)).

2. **Demonstrating Retaliation for Protected Activity:**

- If others were permitted to film or record without interference, while you were subject to adverse actions, this supports a claim of retaliation for exercising your First Amendment rights (*Hartman v. Moore*, 547 U.S. 250 (2006)).

3. **Establishing Equal Protection Violations:**

- Evidence of inconsistent treatment could also support a claim under the Equal Protection Clause, which prohibits arbitrary or discriminatory enforcement of laws or policies (*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)).

4. **Evaluating Municipal Liability:**

- Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipalities can be held liable for constitutional violations caused by official policies or practices. Documents showing a pattern of selective enforcement may establish the City's liability for unconstitutional conduct.

5. **Rebutting Qualified Immunity:**

- If city officials claim qualified immunity, comparative enforcement records can show that their actions were objectively unreasonable or violated clearly established law on filming in public spaces (*Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011)).

6. **Objective Evidence of Policy Enforcement:**

- These documents provide tangible proof of how the City or Farmers Market enforced its policies, which is often more reliable than testimony.

---

**Relevant Case Law Supporting Your Request**

1. **First Amendment Right to Record:**

- *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011): Recognizes a clearly established First Amendment right to record public officials in public spaces.

2. **Viewpoint Discrimination and Selective Enforcement:**

- *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995): Viewpoint discrimination in a public forum is prohibited under the First Amendment.
- *Reed v. Town of Gilbert*, 576 U.S. 155 (2015): Any content-based restriction on speech is presumptively unconstitutional and subject to strict scrutiny.

3. **Retaliation for Protected Speech:**

- *Hartman v. Moore*, 547 U.S. 250 (2006): Prohibits retaliation against individuals for exercising their First Amendment rights.

4. **Equal Protection and Arbitrary Treatment:**

- *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000): The Equal Protection Clause protects individuals from intentionally differential treatment without a rational basis.

5. **Pattern or Practice Evidence for Municipal Liability:**

- *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities can be held liable for constitutional violations caused by official policies, customs, or patterns of behavior.

FROM 2019 TO PRESENT,ANSWER THIS

12.**Reasons for Requesting Audits, Analyses, or Training Updates**
   1. **Evidence of Admitting Fault or Awareness of Violations:**

- If the City or Farmers Market updated training materials or conducted audits after your incident, it may demonstrate that they recognized deficiencies in their policies or practices related to constitutional rights. While such evidence may not directly establish liability, it can be used to show awareness or deliberate indifference to prior violations.

2. **Demonstrating Inadequate Training or Policies:**

   - Audits or training updates can reveal whether the City's training on First Amendment issues was deficient at the time of your incident. Inadequate training can form the basis of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

3. **Proving Deliberate Indifference:**

   - Failure to properly train or correct known deficiencies in response to incidents involving constitutional violations can support claims of deliberate indifference, particularly if similar incidents occurred previously.

4. **Rebutting Qualified Immunity:**

   - Updated materials or post-incident analyses can show that officials' conduct violated clearly established law, undermining claims of qualified immunity (*Hope v. Pelzer*, 536 U.S. 730 (2002)).

5. **Establishing a Pattern or Practice:**

   - If post-incident audits reveal systemic issues or repeat violations of constitutional rights, this could support a broader claim of unconstitutional policies or practices.

---

**Relevant Case Law Supporting Your Request**

1. **Inadequate Training as Basis for Municipal Liability:**

   - *City of Canton v. Harris*, 489 U.S. 378 (1989): A municipality can be held liable under *Monell* for failing to adequately train employees, leading to constitutional violations.

2. **Deliberate Indifference Standard:**

   - *Connick v. Thompson*, 563 U.S. 51 (2011): Establishes that failure to train employees can constitute deliberate indifference if the need for training was obvious and the lack of it led to constitutional violations.

3. **Relevance of Post-Incident Analyses:**

   - *Adams v. City of Fremont*, 68 F.3d 1539 (9th Cir. 1995): Post-incident reviews and audits may provide evidence of pre-existing deficiencies or failures to address known constitutional issues.

4. **Qualified Immunity and Clearly Established Law:**

   - *Hope v. Pelzer*, 536 U.S. 730 (2002): Officials are not entitled to qualified immunity if their conduct violates clearly established constitutional rights, which may be illustrated by training deficiencies.

5. **Evidence of Unconstitutional Policies or Practices:**

- *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipal liability can arise from policies, customs, or practices that lead to constitutional violations.

FROM 2019 TO PRESENT,ANSWER THIS

13. **Reasons for Requesting Policy Implementation and Enforcement Criteria**
    1. **Determining Constitutionality of Trespass Warnings:**

       - The criteria or internal memos for issuing trespass warnings involving filming or speech in public spaces are directly relevant to assessing whether the warnings were applied in a manner consistent with the First Amendment. Public spaces are often traditional public forums, where speech restrictions are subject to strict scrutiny (*Hague v. Committee for Industrial Organization*, 307 U.S. 496 (1939)).

    2. **Proving Viewpoint Discrimination:**

       - If the criteria or memos reveal selective enforcement or specific targeting of certain viewpoints, this supports claims of unconstitutional viewpoint discrimination (*Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995)).

    3. **Evaluating Arbitrary or Overbroad Application:**

       - Policies governing trespass warnings must provide clear, narrowly tailored standards. Vague or overly broad criteria can lead to arbitrary enforcement, violating constitutional protections (*Grayned v. City of Rockford*, 408 U.S. 104 (1972)).

    4. **Establishing Municipal Liability:**

       - Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipalities can be held liable for unconstitutional policies or customs. If the City's policies or practices concerning trespass warnings led to constitutional violations, these documents will help establish liability.

    5. **Rebutting Claims of Qualified Immunity:**

       - If government officials claim qualified immunity, these documents can demonstrate that they acted unreasonably or contrary to clearly established legal standards for public forums and speech restrictions (*Hope v. Pelzer*, 536 U.S. 730 (2002)).

    6. **Ensuring Compliance with Due Process:**

       - The issuance of trespass warnings may implicate procedural due process rights, especially if the warnings restrict access to public spaces without proper notice or opportunity to contest the decision (*Mathews v. Eldridge*, 424 U.S. 319 (1976)).

---

**Relevant Case Law Supporting Your Request**

1. **Public Forum Doctrine and Speech Protections:**

- *Hague v. Committee for Industrial Organization*, 307 U.S. 496 (1939): Establishes that streets and parks are traditional public forums where speech protections are strongest.
- *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983): Defines the types of forums (traditional, designated, nonpublic) and the corresponding standards for speech restrictions.

2. **Viewpoint Discrimination and Arbitrary Enforcement:**

- *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995): Prohibits government regulation of speech based on viewpoint.
- *Grayned v. City of Rockford*, 408 U.S. 104 (1972): Holds that vague or overbroad laws governing public behavior are unconstitutional.

3. **Due Process Rights:**

- *Mathews v. Eldridge*, 424 U.S. 319 (1976): Procedural due process requires notice and an opportunity to be heard before depriving someone of rights or access.

4. **Municipal Liability for Policies and Practices:**

- *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities can be held liable for constitutional violations caused by official policies, practices, or customs.

5. **Right to Record Public Officials:**

- *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011): Recognizes a clearly established First Amendment right to record public officials in public spaces.

FROM 2019 TO PRESENT,ANSWER THIS

14. **Reasons for Requesting Evidence of Viewpoint Discrimination**
    1. **Proving Viewpoint Discrimination:**

- Viewpoint discrimination occurs when the government allows or disallows speech based on the speaker's perspective. Complaints, internal memos, or analyses concerning allegations of selective enforcement are critical to showing that the City or its agents engaged in unconstitutional viewpoint discrimination (*Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995)).

2. **Demonstrating a Pattern or Practice of Discrimination:**

- If the City of Punta Gorda has a documented history of selectively enforcing rules or restricting speech based on viewpoint, this establishes a pattern or practice of unconstitutional behavior under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

3. **Rebutting Neutrality Claims:**

- The City or Farmers Market may argue that their actions were neutral and uniformly enforced. Evidence of complaints or analyses showing selective enforcement refutes this defense and highlights discriminatory intent.

4. **Assessing Intent or Motive:**

- Internal memos and analyses may reveal the true motives behind enforcement decisions, which are critical in proving unconstitutional retaliation or selective enforcement (*Hartman v. Moore*, 547 U.S. 250 (2006)).

5. **Strengthening Equal Protection Claims:**

- If enforcement disproportionately impacted a specific group or viewpoint, this supports a claim under the Equal Protection Clause of the Fourteenth Amendment (*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)).

6. **Challenging the Legitimacy of Policies:**

- If policies are selectively applied or enforced, they may be deemed overly broad or vague, violating constitutional protections against arbitrary enforcement (*Kolender v. Lawson*, 461 U.S. 352 (1983)).

---

**Relevant Case Law Supporting Your Request**

1. **Prohibition on Viewpoint Discrimination:**

- *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995): Government actors cannot favor or disfavor speech based on the speaker's viewpoint.
- *Reed v. Town of Gilbert*, 576 U.S. 155 (2015): Content-based or viewpoint-based restrictions on speech are presumptively unconstitutional.

2. **Retaliation for Protected Speech:**

- *Hartman v. Moore*, 547 U.S. 250 (2006): Retaliation for engaging in constitutionally protected activity violates the First Amendment.

3. **Municipal Liability for Patterns of Discrimination:**

- *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities can be held liable for constitutional violations caused by official policies or customs.

4. **Equal Protection Against Selective Enforcement:**

- *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000): The Equal Protection Clause prohibits the government from treating individuals differently without a rational basis.

5. **Limits on Arbitrary Enforcement:**

- *Kolender v. Lawson*, 461 U.S. 352 (1983): Laws or policies that are overly vague and permit arbitrary enforcement are unconstitutional under the Due Process Clause.

FROM 2019 TO PRESENT,ANSWER THIS

15,**Reasons for Requesting Documentation of Actions Taken to Review or Analyze Plaintiff's Trespass Incidents**

1. **Demonstrating Awareness of Potential Violations:**

- Actions taken by city employees or law enforcement to review or analyze the handling of your trespass incidents may reveal whether officials recognized that their actions violated constitutional rights or City policies. This supports claims of deliberate indifference or intentional misconduct (*Connick v. Thompson*, 563 U.S. 51 (2011)).

2. **Identifying Procedural Irregularities or Misconduct:**

- Documentation may highlight procedural errors, deviations from established guidelines, or misconduct in issuing the trespass warnings. Such evidence is critical for demonstrating unconstitutional behavior.

3. **Proving Retaliatory Intent:**

- Internal reviews or analyses might disclose retaliatory motives behind the trespass warnings, which strengthens a First Amendment retaliation claim (*Hartman v. Moore*, 547 U.S. 250 (2006)).

4. **Establishing a Pattern of Discriminatory Enforcement:**

- Records of how your trespass incidents were handled can help demonstrate that enforcement actions were inconsistent or discriminatory, supporting claims of selective enforcement or viewpoint discrimination (*Reed v. Town of Gilbert*, 576 U.S. 155 (2015)).

5. **Challenging Qualified Immunity:**

- If city employees or law enforcement analyzed their actions and concluded they were inconsistent with clearly established law, this evidence undermines any qualified immunity defense (*Hope v. Pelzer*, 536 U.S. 730 (2002)).

6. **Municipal Liability Under *Monell*:**

- Evidence that city officials reviewed and failed to address constitutional violations in your case can demonstrate that the City tolerated or ratified unconstitutional practices, making them liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

---

**Relevant Case Law Supporting Your Request**

1. **Municipal Liability and Training Deficiencies:**

- *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities can be held liable for constitutional violations caused by their policies, customs, or failure to address known issues.

2. **Deliberate Indifference to Violations:**

- *City of Canton v. Harris*, 489 U.S. 378 (1989): A municipality's failure to train or correct known deficiencies can support liability if it amounts to deliberate indifference to constitutional rights.

3. **Retaliation for First Amendment Activity:**

- *Hartman v. Moore*, 547 U.S. 250 (2006): Adverse actions taken in retaliation for constitutionally protected speech are actionable under the First Amendment.

4. **Viewpoint Neutrality in Enforcement:**

- *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995):
  Viewpoint-based restrictions are unconstitutional in public forums.

5. **Qualified Immunity and Clearly Established Law:**

- *Hope v. Pelzer*, 536 U.S. 730 (2002): Officials are not entitled to qualified immunity if
  their actions violate clearly established constitutional rights.

FROM 2019 TO PRESENT,ANSWER THIS

16.**Reasons for Requesting Redacted Legal Advice Regarding Trespass Warnings**
1. **Demonstrating Intent and Knowledge:**

- Legal advice provided to city employees regarding enforcement of trespass warnings
  may reveal whether the City understood its constitutional obligations, including the
  requirement of viewpoint neutrality. Such evidence can demonstrate intent, knowledge,
  or deliberate indifference to constitutional violations.

2. **Evaluating Compliance with Viewpoint Neutrality:**

- The advice may clarify whether the City's policies or practices adhered to the principles
  of viewpoint neutrality, especially in public forums where content-based restrictions are
  presumptively unconstitutional (*Rosenberger v. Rector and Visitors of the University of
  Virginia*, 515 U.S. 819 (1995)).

3. **Assessing Consistency in Policy Enforcement:**

- If the legal advice explicitly directed employees to avoid viewpoint discrimination, but
  the actions taken against you suggest otherwise, it could strengthen claims of selective
  enforcement or retaliation.

4. **Challenging Qualified Immunity:**

- Legal advice outlining clear constitutional obligations undermines a qualified immunity
  defense, as it demonstrates that officials knew or should have known their actions
  violated clearly established law (*Hope v. Pelzer*, 536 U.S. 730 (2002)).

5. **Municipal Liability Under *Monell*:**

- If the legal advice reflects unconstitutional policies or fails to address known
  deficiencies in enforcement practices, it could support claims of municipal liability
  under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

6. **Relevance to Forum Analysis:**

- Legal advice may also address how the City categorizes public spaces (e.g., traditional,
  limited public, or nonpublic forums), which affects the standards for permissible
  restrictions on speech. Improperly categorizing a public space can lead to
  unconstitutional enforcement (*Perry Education Association v. Perry Local Educators'
  Association*, 460 U.S. 37 (1983)).

**Relevant Case Law Supporting Your Request**
1. **Viewpoint Neutrality:**

   - *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995): Viewpoint discrimination is impermissible in public forums.
2. **Standards for Public Forums:**

   - *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983): Outlines the levels of scrutiny applicable to speech restrictions in different types of forums.
3. **Retaliation for Protected Speech:**

   - *Hartman v. Moore*, 547 U.S. 250 (2006): Retaliation against individuals for exercising their First Amendment rights is actionable.
4. **Municipal Liability for Constitutional Violations:**

   - *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities can be held liable for constitutional violations stemming from official policies or customs.
5. **Qualified Immunity and Clearly Established Law:**

   - *Hope v. Pelzer*, 536 U.S. 730 (2002): Officials are not entitled to qualified immunity if their actions violated clearly established constitutional rights.

FROM 2019 TO PRESENT,ANSWER THIS


17.**Reasons for Requesting Communications and Logs**
1. **Establishing Retaliatory Intent:**

   - Communications involving city officials or law enforcement discussing your activities or enforcement actions may reveal retaliatory motives, such as targeting you for exercising your First Amendment rights (*Hartman v. Moore*, 547 U.S. 250 (2006)).
2. **Evidence of Selective Enforcement:**

   - Emails or text messages may show whether the City selectively enforced policies against you while allowing others to engage in similar activities without consequence. This supports claims of unconstitutional selective enforcement (*Reed v. Town of Gilbert*, 576 U.S. 155 (2015)).
3. **Proving Viewpoint Discrimination:**

   - Internal communications may demonstrate that actions taken against you were based on the content or viewpoint of your speech, violating the First Amendment (*Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995)).
4. **Challenging Qualified Immunity:**

   - If communications show that officials were aware their actions violated clearly established constitutional rights, this undermines claims of qualified immunity (*Hope v. Pelzer*, 536 U.S. 730 (2002)).

5. **Identifying Municipal Liability:**

- Patterns or themes in these communications could support a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), by showing that unconstitutional enforcement was part of a policy, practice, or custom.

6. **Context for Trespass Warnings and Enforcement Actions:**

- Communications may reveal procedural irregularities, improper motives, or coordination between officials that led to trespass warnings or other enforcement actions against you.

---

**Relevant Case Law Supporting Your Request**

1. **First Amendment Retaliation:**

- *Hartman v. Moore*, 547 U.S. 250 (2006): Retaliation for exercising constitutionally protected free speech violates the First Amendment.

2. **Viewpoint Discrimination and Content-Based Restrictions:**

- *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995): Viewpoint-based restrictions are impermissible in public forums.
- *Reed v. Town of Gilbert*, 576 U.S. 155 (2015): Content-based restrictions are presumptively unconstitutional.

3. **Municipal Liability for Unconstitutional Practices:**

- *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities can be held liable for unconstitutional policies, customs, or practices.

4. **Qualified Immunity and Clearly Established Rights:**

- *Hope v. Pelzer*, 536 U.S. 730 (2002): Officials are not entitled to qualified immunity if their actions violate clearly established law.

5. **Evidence Supporting Retaliation Claims:**

- *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977): Mixed motives for adverse actions can still constitute retaliation if a protected activity was a substantial factor.

FROM 2019 TO PRESENT,ANSWER THIS

19.Records showing oversight or disciplinary actions, if any, taken against city employees for violating public interaction policies, including viewpoint discrimination.
**Reasons for Requesting Records of Oversight or Disciplinary Actions**

1. **Demonstrating Accountability:**

- Records of oversight or disciplinary actions can show whether the City takes allegations of viewpoint discrimination or other public interaction violations seriously. A lack of

disciplinary measures may indicate a failure to address constitutional violations, supporting claims of deliberate indifference.

2. **Establishing Patterns of Misconduct:**

   - Evidence of repeated violations without corrective action can demonstrate a pattern or practice of unconstitutional behavior, bolstering claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

3. **Proving Knowledge and Deliberate Indifference:**

   - If city employees were disciplined for similar behavior in the past, it could show that the City knew about the issue and either failed to provide adequate training or continued to tolerate unconstitutional practices (*City of Canton v. Harris*, 489 U.S. 378 (1989)).

4. **Supporting Viewpoint Discrimination Claims:**

   - If disciplinary actions (or the lack thereof) align with your allegations, it supports your claims that the City failed to prevent or respond to viewpoint discrimination, violating the First Amendment (*Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995)).

5. **Rebutting Neutrality Claims:**

   - The City may argue that its policies are neutral and uniformly enforced. Evidence of oversight or disciplinary records (or their absence) can contradict this defense, especially if enforcement disproportionately impacts certain viewpoints or individuals.

6. **Challenging Qualified Immunity:**

   - Oversight records may reveal whether employees knowingly violated clearly established law, undermining any qualified immunity defense (*Hope v. Pelzer*, 536 U.S. 730 (2002)).

---

**Relevant Case Law Supporting Your Request**

1. **Municipal Liability and Deliberate Indifference:**

   - *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities can be held liable for unconstitutional policies or customs that cause constitutional violations.
   - *City of Canton v. Harris*, 489 U.S. 378 (1989): Failure to train or discipline employees can constitute deliberate indifference if it leads to constitutional violations.

2. **Prohibition on Viewpoint Discrimination:**

   - *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995): Government entities cannot discriminate based on viewpoint in regulating speech.
   - *Reed v. Town of Gilbert*, 576 U.S. 155 (2015): Content-based or viewpoint-based restrictions are presumptively unconstitutional.

3. **Qualified Immunity and Clearly Established Rights:**

   - *Hope v. Pelzer*, 536 U.S. 730 (2002): Officials are not entitled to qualified immunity if their actions violate clearly established constitutional rights.

4. **Retaliation for Protected Speech:**

- *Hartman v. Moore*, 547 U.S. 250 (2006): Retaliation for exercising First Amendment rights is actionable.

5. **Pattern of Violations Supporting Liability:**

- *Connick v. Thompson*, 563 U.S. 51 (2011): A pattern of similar violations can show deliberate indifference and support liability.

FROM 2019 TO PRESENT,ANSWER THIS
20.Video and Evidence Records: All video recordings, including security footage or body-worn camera recordings, related to Plaintiff's interactions with city employees or law enforcement officials on public property

**Reasons for Requesting Video and Evidence Records**

1. **Objective Documentation of Events:**

- Video recordings, such as security footage or body-worn camera recordings, provide objective evidence of your interactions with city employees or law enforcement officials. This evidence is crucial for verifying the facts of the incidents in question.

2. **Proving or Disproving Allegations:**

- Video evidence can corroborate your claims of viewpoint discrimination, selective enforcement, or retaliation, or it may contradict the City's narrative of events. Courts often consider video evidence more reliable than witness testimony (*Scott v. Harris*, 550 U.S. 372 (2007)).

3. **Evaluating Conduct of City Officials:**

- Footage of the interactions may reveal whether city employees or law enforcement acted appropriately, followed established policies, or engaged in retaliatory or discriminatory behavior, supporting your First and Fourteenth Amendment claims.

4. **Challenging Qualified Immunity:**

- If video evidence shows that officials violated clearly established constitutional rights, it can defeat claims of qualified immunity (*Hope v. Pelzer*, 536 U.S. 730 (2002)).

5. **Establishing Municipal Liability:**

- Video recordings may demonstrate whether the actions of city employees were consistent with an unconstitutional policy, custom, or practice attributable to the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

6. **Ensuring Viewpoint Neutrality:**

- Footage can provide direct evidence of how city employees or law enforcement treated you compared to others in the same or similar circumstances, demonstrating whether their actions were viewpoint-neutral (*Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995)).

**Relevant Case Law Supporting Your Request**

1. **Use of Video Evidence:**

   - *Scott v. Harris*, 550 U.S. 372 (2007): Established that video evidence can conclusively resolve factual disputes in constitutional claims.

2. **Viewpoint Discrimination:**

   - *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995): Prohibits viewpoint-based restrictions on speech in public forums.

3. **Retaliation for Protected Speech:**

   - *Hartman v. Moore*, 547 U.S. 250 (2006): Adverse actions taken in retaliation for exercising constitutional rights are actionable.

4. **Municipal Liability:**

   - *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities can be held liable for unconstitutional actions carried out pursuant to official policies or practices.

5. **Qualified Immunity and Clearly Established Law:**

   - *Hope v. Pelzer*, 536 U.S. 730 (2002): Officials are not entitled to qualified immunity if their actions violate clearly established constitutional rights.

FROM 2019 TO PRESENT,ANSWER THIS

19.Defendants interactions with Ian McGuire Produce any and all emails, text messages, videos, documents, audio recordings, and other materials in your possession or the POLICE, custody, or control related to or referencing Ian Mcguire and any filming activities he engaged in at the Farmers Market or government buildings from 2016 to present

**Reasons for Requesting Communications and Records Related to Ian McGuire**

1. **Establishing Patterns of Conduct and Selective Enforcement:**

   - Records related to Ian McGuire's filming activities at the Farmers Market or government buildings can help demonstrate whether the City or law enforcement applied its policies consistently or selectively. This is crucial for proving selective enforcement or viewpoint discrimination.

2. **Comparing Treatment of Similar Conduct:**

   - If Ian McGuire was allowed to film without interference while you faced adverse actions for similar activities, this supports claims of unequal treatment under the First Amendment and the Equal Protection Clause (*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)).

3. **Proving Viewpoint Discrimination:**

   - Communications referencing Ian McGuire may reveal whether enforcement actions were based on the content or viewpoint of his speech, compared to yours. Discrimination

based on viewpoint is unconstitutional in public forums (*Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995)).

4. **Demonstrating Retaliation:**

   • Records may show whether the City treated Ian McGuire differently because of his activities, helping to highlight retaliatory motives in your case if you were treated adversely for similar behavior (*Hartman v. Moore*, 547 U.S. 250 (2006)).

5. **Supporting Municipal Liability Claims:**

   • If the City tolerated or encouraged different enforcement practices for similar conduct, this could establish a pattern of unconstitutional behavior or official policies under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

6. **Challenging the City's Neutrality Defense:**

   • The City may argue its policies are viewpoint-neutral and uniformly applied. Records related to Ian McGuire's activities may refute this claim and show that enforcement was inconsistent or discriminatory.

---

**Relevant Case Law Supporting Your Request**

1. **Viewpoint Discrimination:**

   • *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995): Prohibits viewpoint discrimination in public forums.
   • *Reed v. Town of Gilbert*, 576 U.S. 155 (2015): Content-based restrictions on speech are presumptively unconstitutional.

2. **Selective Enforcement and Equal Protection:**

   • *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000): The Equal Protection Clause prohibits arbitrary or discriminatory enforcement of laws or policies.

3. **Retaliation for Protected Speech:**

   • *Hartman v. Moore*, 547 U.S. 250 (2006): Retaliation for engaging in constitutionally protected activity violates the First Amendment.

4. **Municipal Liability for Unconstitutional Policies or Practices:**

   • *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities can be held liable for unconstitutional actions that reflect official policies or practices.

5. **Qualified Immunity and Clearly Established Law:**

   • *Hope v. Pelzer*, 536 U.S. 730 (2002): Officials are not entitled to qualified immunity if their actions violate clearly established constitutional rights.

FROM 2019 TO PRESENT,ANSWER THIS

20. [sic] Defendants interactions with other auditors and or journalist Produce any and all emails, text messages, videos, documents, audio recordings, and other materials in your possession or the POLICE, custody, or control related to or referencing AUDITORS and any filming activities they engaged in at the Farmers Market or government buildings from 2016 to present

**Reasons for Requesting Records Related to Defendants' Interactions with Other Auditors and Journalists**

1. **Establishing Patterns of Discriminatory Behavior:**

   - Records involving other auditors or journalists engaging in filming activities can demonstrate whether the City or Farmers Market consistently enforced its policies or selectively targeted certain individuals. This supports claims of viewpoint discrimination or selective enforcement (*Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995)).

2. **Comparing Enforcement Practices:**

   - If other auditors or journalists filmed at the same locations without interference, while you faced adverse actions, it supports claims of unequal treatment under the First and Fourteenth Amendments (*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)).

3. **Demonstrating Retaliatory Intent:**

   - Communications or records related to auditors or journalists may reveal retaliatory motives against individuals engaging in constitutionally protected activities, such as recording public officials or criticizing government actions (*Hartman v. Moore*, 547 U.S. 250 (2006)).

4. **Assessing Viewpoint Neutrality:**

   - If the City permitted certain viewpoints or individuals to film while prohibiting others, these records may highlight violations of the viewpoint neutrality requirement in public forums (*Reed v. Town of Gilbert*, 576 U.S. 155 (2015)).

5. **Proving Municipal Liability:**

   - Evidence of systemic patterns of targeting auditors or journalists can establish a broader unconstitutional policy, practice, or custom, making the City liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

6. **Undermining Qualified Immunity:**

   - If records show that city officials or law enforcement knowingly violated constitutional rights by targeting auditors or journalists, it weakens claims of qualified immunity (*Hope v. Pelzer*, 536 U.S. 730 (2002)).

**Relevant Case Law Supporting Your Request**

1. **Viewpoint Discrimination and Content-Based Restrictions:**

- *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995): Prohibits government actors from discriminating based on viewpoint.
- *Reed v. Town of Gilbert*, 576 U.S. 155 (2015): Content-based restrictions are subject to strict scrutiny and are presumptively unconstitutional.

2. **Selective Enforcement and Equal Protection:**

   - *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000): The Equal Protection Clause protects against arbitrary and discriminatory enforcement.

3. **Retaliation for Exercising First Amendment Rights:**

   - *Hartman v. Moore*, 547 U.S. 250 (2006): Retaliatory actions against individuals for engaging in constitutionally protected activities violate the First Amendment.

4. **Municipal Liability for Patterns of Unconstitutional Behavior:**

   - *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities are liable for unconstitutional policies, practices, or customs that lead to violations of constitutional rights.

5. **Qualified Immunity and Clearly Established Rights:**

   - *Hope v. Pelzer*, 536 U.S. 730 (2002): Officials cannot claim qualified immunity if their actions violate clearly established constitutional rights.

FROM 2019 TO PRESENT, ANSWER THIS

21. [sic] Defendants and or police evidence and or discovery on Ian Mcguire Every thing you have

**Reasons for Requesting Evidence or Discovery Related to Ian McGuire**

1. **Establishing Patterns of Interaction:**

   - Requesting all evidence or discovery related to Ian McGuire can help identify how the Defendants or law enforcement interacted with other individuals engaging in similar activities. This comparison can demonstrate patterns of selective enforcement, retaliation, or inconsistent application of policies.

2. **Proving Viewpoint Discrimination:**

   - If Ian McGuire was treated differently based on the content or viewpoint of his speech or activities compared to your own, it supports a claim of unconstitutional viewpoint discrimination (*Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995)).

3. **Demonstrating Retaliatory Intent:**

   - Records regarding Ian McGuire may reveal whether actions taken against him or lack thereof were motivated by retaliation or aligned with content-based enforcement. This is relevant for First Amendment retaliation claims (*Hartman v. Moore*, 547 U.S. 250 (2006)).

4. **Identifying Policy or Custom:**

- Evidence involving Ian McGuire's interactions may show whether the Defendants'
actions were part of an official policy, practice, or custom, supporting claims under
*Monell v. Department of Social Services*, 436 U.S. 658 (1978).

5. **Challenging Qualified Immunity:**

- If records show the Defendants knowingly or repeatedly violated constitutional rights
while addressing similar activities involving Ian McGuire, it weakens their qualified
immunity defense (*Hope v. Pelzer*, 536 U.S. 730 (2002)).

6. **Exploring Contextual Enforcement:**

- Understanding the full scope of the Defendants' dealings with Ian McGuire can provide
insight into how they handle similar First Amendment activities, which may bolster
claims of improper or arbitrary enforcement.

---

**Relevant Case Law Supporting Your Request**

1. **Viewpoint Discrimination:**

- *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995):
Viewpoint discrimination in public forums is unconstitutional.
- *Reed v. Town of Gilbert*, 576 U.S. 155 (2015): Content-based restrictions are
presumptively unconstitutional and subject to strict scrutiny.

2. **Selective Enforcement and Equal Protection:**

- *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000): The Equal Protection Clause
prohibits discriminatory treatment of similarly situated individuals.

3. **First Amendment Retaliation:**

- *Hartman v. Moore*, 547 U.S. 250 (2006): Establishes that adverse actions taken in
response to protected speech can violate the First Amendment.

4. **Municipal Liability:**

- *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities are liable
for constitutional violations caused by policies, practices, or customs.

5. **Qualified Immunity and Clearly Established Law:**

- *Hope v. Pelzer*, 536 U.S. 730 (2002): Officials cannot claim qualified immunity when
their actions violate clearly established constitutional rights.

FROM 2019 TO PRESENT,ANSWER THIS

22. [sic] Defendants information on Andrew Sheets Any and all emails, documents, interoffice memos,
text, video and audio that you and or the police have with "Andrew Sheets" name in it from 2012 to
present.

**Reasons for Requesting Records Related to Andrew Sheets**

1. **Establishing Retaliatory Intent:**

- Communications, memos, or other records that mention your name may demonstrate whether the Defendants or law enforcement targeted you for adverse actions based on your First Amendment-protected activities, such as filming or speech (*Hartman v. Moore*, 547 U.S. 250 (2006)).

2. **Proving Viewpoint Discrimination:**

   - Records that discuss your activities may reveal whether actions against you were motivated by the content or viewpoint of your speech, supporting claims of unconstitutional viewpoint discrimination (*Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995)).

3. **Identifying Patterns of Interaction:**

   - Reviewing records from 2012 to the present can help establish whether you were consistently subjected to discriminatory or retaliatory treatment over time, strengthening claims of selective enforcement or deliberate targeting.

4. **Demonstrating Municipal Liability:**

   - If records indicate that the City maintained a policy, practice, or custom of targeting or discriminating against you, this evidence could support a claim of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

5. **Challenging Qualified Immunity:**

   - If officials discussed or acknowledged that actions against you violated your constitutional rights, these records could undermine any qualified immunity defense (*Hope v. Pelzer*, 536 U.S. 730 (2002)).

6. **Evaluating Evidence of Coordination or Malice:**

   - Records may reveal whether enforcement actions were coordinated across departments or conducted with improper intent, which could strengthen claims of bad faith enforcement.

---

**Relevant Case Law Supporting Your Request**

1. **Retaliation for Protected Activity:**

   - *Hartman v. Moore*, 547 U.S. 250 (2006): Retaliatory actions for engaging in constitutionally protected activities violate the First Amendment.

2. **Viewpoint Discrimination:**

   - *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995): Viewpoint discrimination in public forums is impermissible.
   - *Reed v. Town of Gilbert*, 576 U.S. 155 (2015): Content-based restrictions on speech are subject to strict scrutiny.

3. **Municipal Liability for Unconstitutional Practices:**

- *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities are liable for constitutional violations stemming from policies, customs, or practices.

4. **Qualified Immunity and Clearly Established Rights:**

   - *Hope v. Pelzer*, 536 U.S. 730 (2002): Officials cannot claim qualified immunity if their actions violate clearly established constitutional rights.

5. **Equal Protection and Selective Enforcement:**

   - *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000): Disparate treatment of similarly situated individuals can violate the Equal Protection Clause.

FROM 2019 TO PRESENT,ANSWER THIS

23. [sic] Defendants information on other protests that were in Punta Gorda Any and all emails, documents, interoffice memos, text, video and audio that you and or the police have with "The gun grabber protest" "the black live matters protest" and the "abortion protest" from 2012 to present.

**Reasons for Requesting Information on Other Protests in Punta Gorda**

1. **Demonstrating Inconsistent Treatment of Protests:**

   - Records related to other protests can help establish whether the City or law enforcement applied policies and enforcement actions consistently. If similar protests were treated differently, it supports claims of selective enforcement or viewpoint discrimination (*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)).

2. **Proving Viewpoint Discrimination:**

   - If the City handled protests differently based on the content or viewpoint of the protestors, this supports a claim of unconstitutional viewpoint discrimination under the First Amendment (*Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995)).

3. **Identifying Municipal Policies or Practices:**

   - Records may reveal a pattern or practice of treating protests differently based on their content, establishing municipal liability for unconstitutional behavior under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

4. **Challenging Neutrality Defenses:**

   - The City may argue that its policies are neutral and uniformly enforced. Evidence from other protests can refute this defense if enforcement was inconsistent or content-based.

5. **Supporting Retaliation Claims:**

   - Records related to enforcement actions at other protests may reveal whether actions taken against you were part of a broader strategy to retaliate against certain viewpoints or individuals (*Hartman v. Moore*, 547 U.S. 250 (2006)).

6. **Proving Overbreadth or Vagueness in Policies:**

- Records may show that the City's policies governing protests are overly broad or vague, which can lead to arbitrary enforcement in violation of the First and Fourteenth Amendments (*Kolender v. Lawson*, 461 U.S. 352 (1983)).

FROM 2018 TO PRESENT,ANSWER THIS

24. [sic] Defendants information on Farmers Market conducting business Any and all emails, documents, interoffice memos, text, video and audio that you and or the police have with "Farmers market conducting business" from 2012 to present

**Reasons for Requesting Information on the Farmers Market Conducting Business**

1. **Establishing the Nature of the Farmers Market:**

   - Records related to the Farmers Market's operations can help clarify its relationship with the City, including whether it operates on public property and whether it is subject to constitutional constraints such as the First Amendment.

2. **Demonstrating Municipal Involvement:**

   - Emails, documents, and other communications may reveal the extent of the City's involvement in managing, regulating, or enforcing policies at the Farmers Market, which is critical for establishing municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

3. **Proving Viewpoint Discrimination or Selective Enforcement:**

   - Records may show how the Farmers Market conducts its business and whether City policies or practices led to discriminatory enforcement actions against certain individuals or activities, such as filming or protests.

4. **Evaluating Public Forum Status:**

   - If the Farmers Market operates on public property with City involvement, it may be considered a public forum or limited public forum, where restrictions on speech must meet constitutional standards (*Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983)).

5. **Challenging the Legitimacy of Policies:**

   - Internal communications about the Farmers Market may reveal whether the City or its agents created or enforced unconstitutional policies, such as those restricting filming or other First Amendment activities.

6. **Identifying Evidence of Retaliation or Bias:**

   - Records may show whether the City or the Farmers Market enforced policies neutrally or whether actions against you were motivated by retaliation or bias.

---

**Relevant Case Law Supporting Your Request**

1. **Municipal Liability:**

- *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities can be held liable for constitutional violations caused by official policies, customs, or practices.

2. **Public Forum Doctrine:**

- *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983): Speech restrictions in public forums are subject to strict scrutiny and must be narrowly tailored to serve a compelling government interest.

3. **Viewpoint Discrimination:**

- *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995): Discriminating against speech based on viewpoint is unconstitutional in public forums.

4. **Selective Enforcement and Equal Protection:**

- *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000): Disparate treatment of similarly situated individuals can violate the Equal Protection Clause.

5. **First Amendment Retaliation:**

- *Hartman v. Moore*, 547 U.S. 250 (2006): Retaliation for engaging in protected speech is actionable under the First Amendment.

FROM 2019 TO PRESENT,ANSWER THIS

It has now been weeks, and I have not been notified by you of when any such documents will be produced. The Federal Rules of Civil Procedure set forth explicit time limits for responding to discovery requests. If unable to answer timely, a party should seek an informal extension of time. I am not aware of any such extension request from you. Your responses are thus untimely and have delayed the discovery process. Please provide your receipt and acknowledgment of this correspondence and whether you agree to supplement your responses. Please provide better responses and any and all documents in your possession to the above-mentioned items by close of business 1/28/2025 in order to avoid the filing of a motion to compel and to seek other appropriate relief from the Court.

*/s/andrew sheets*
*andrew sheets pro se*
*11408 pepperdine st*
*punta gorda fl 33955*

federallawsuit4freespeech@gmail.com