UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

          Plaintiff,

v.                                        Case No.:  2:24-cv-495-JLB-KCD

JERRY PRESSELLER, et al.,

          Defendants.
_____/

## **ORDER**

Before the Court are four motions to dismiss.  Defendant Jerry Presseller filed a motion to dismiss (Doc. 98), and Plaintiff Andrew Sheets responded (Doc. 103).  Defendant Punta Gorda Downtown Merchants Association, Inc. filed a motion to dismiss (Doc. 99), and Sheets responded (Doc. 104). Defendant Officer David Joseph Lipker filed a motion to dismiss (Doc. 100), and Sheets responded (Doc. 105). Defendant City of Punta Gorda filed a motion to dismiss (Doc. 101), and Sheets responded (Doc. 106).  The motions filed by Presseller, the Merchants Association, and Officer Lipker are **GRANTED**.  The City's motion is granted in part and denied in part.

## BACKGROUND

This case involves a pro se independent journalist who frequently dons a body camera while in public to record his interactions with government officials.[1]  (Doc. 97 at ¶ 3).  On May 30, 2020, Sheets, while video recording the public at a farmers' market located in downtown Punta Gorda, was issued a trespass warning by Punta Gorda police officer, David Joseph Lipker, prohibiting him from returning to the farmers' market area on Saturdays for a year.  (*Id.* at ¶¶ 7, 56, 65, 90; Doc. 106-1 at 60).  The farmers' market is operated by the Merchants Association under the management of Jerry Presseller.  (Doc. 97 at ¶¶ 13–14, 27.a, 37, 49).  A lease existed between the City and the Merchants Association for the downtown area where the farmers' market occurred.[2]  (*Id.* at ¶¶ 22, 25).  Sheets contends that the lease transformed the sidewalks and streets from a traditional public forum into private property.  (*Id.* at ¶ 16).  Sheets alleges that, despite the lease, the farmers' market was not "truly a private party event" but that Presseller was merely managing "public space, public sidewalks and roadways[.]"  (*Id.* at ¶¶ 34, 54, 69).  To further complicate matters, Sheets alleges that the trespass warning was issued

---

[1] Sheets has a total of twelve cases pending in the Middle District of Florida.  *See Sheets v. Charlotte County*, 2:24-cv-958-JES-KCD; *Sheets v. Woelk*, 2:25-cv-61-JLB-KCD; *Sheets v. Angelini*, 2:25-cv-00644-JLB-KCD; *Sheets v. Prummell*, 2:24-cv-943-SPC-NPM; *Sheets v. Davoult*, 2:25-cv-130-JLB-KCD; *Sheets v. Martin*, 2:25-cv-444-SPC-NPM; *Sheets v. Lipker*, 2:25-cv-493-JLB-KCD; *Sheets v. Pribble*, 2:25-cv-500-JLB-NPM; *Sheets v. Woelk*, 2:25-cv-611-SPC-NPM; *Sheets v. Gorman*, 2:25-cv-612-JLB-NPM; *Sheets v. Angelini*, 2:25-cv-653-SPC-NPM.

[2] Although Sheets' "well-pleaded facts are accepted as true," *see Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted), the Court would be remiss not to mention that Presseller disputes the existence of a lease between the City and the Merchants Association.  (Doc. 98 at 11).

because he violated Punta Gorda City Ordinance 15-48.[3]  (*Id.* at ¶ 59–60).  Sheets

also briefly references other incidents where City police issued him trespass

warnings.  (*Id.* at ¶¶ 67, 97, 107, 118).

## LEGAL STANDARD

"At the motion to dismiss stage, all well-pleaded facts are accepted as true,

and the reasonable inferences therefrom are construed in the light most favorable to

the plaintiff."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir.

1999) (internal citation omitted).  To avoid dismissal under Federal Rule of Civil

Procedure 12(b)(6), a plaintiff's complaint must "contain sufficient factual matter,

accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  Mere "labels and conclusions, and a formulaic recitation of the

elements of a cause of action" are insufficient to survive a motion to dismiss.

*Twombly*, 550 U.S. at 555.

---

[3] Sheets does not plausibly allege that Officer Lipker relied on the ordinance to
issue the trespass warning.  Rather, Officer Lipker recalled that the ordinance
existed during discovery.  (Doc. 97 at ¶ 60).  Neither the trespass warning nor the
incident report mention the ordinance.  (Doc. 106-1 at 50–52, 60).  Thus, the Court
fails to understand the ordinance's relevance.

## DISCUSSION

Sheets raises seven 42 U.S.C. § 1983 violations.  (Doc. 97).  All Defendants
seek dismissal under Federal Rule of Civil Procedure 12(b)(6).

As a threshold issue, the official capacity claims against Officer Lipker fail.  A
Section 1983 official capacity claim against an officer "is effectively an action
against the governmental entity he represents[.]"  *Adcock v. Baca*, 157 F. App'x 118,
119 (11th Cir. 2005).  Additionally, to the extent these claims are brought against
the City, they fail because "governmental entities . . . cannot be held liable under 42
U.S.C. § 1983 on a theory of *respondeat superior*."  *Id.* at 119.  Rather,
municipalities can only be held liable under Section 1983 "when execution of a
government's policy or custom . . . inflicts the injury[.]"  *Monell v. Dep't of Soc.
Servs. of City of New York*, 436 U.S. 658, 694 (1978).  Thus, Counts II and III
against Officer Lipker in his official capacity are dismissed with prejudice.  Count I
against Officer Lipker in his official capacity is dismissed with prejudice because it
is duplicative of Count V, a *Monell* claim, brought against the City.  *Sheets v.
Jimenez*, No. 2:24-CV-704-SPC-KCD, 2024 WL 5090058, at *2 (M.D. Fla. Dec. 12,
2024).

Also, the Merchants Association and Presseller argue that the Third
Amended Complaint is an impermissible shotgun pleading.  (Doc. 99 at 4–6; Doc. 98
at 3).  The Court finds that the Third Amended Complaint is, as Judge Dudek
suggested in analyzing the Second Amended Complaint, "not so procedurally
deficient that it fails to give [Defendants] notice."  (Doc. 73 at 8).  The Court rejects

the Merchants Association and Presseller's argument that the Third Amended
Complaint is a shotgun pleading.

## I.    Claims against Presseller and the Merchants Association

Presseller and the Merchants Association argue that they are not state actors
and, thus, the Section 1983 claims against them should be dismissed.  (Doc. 98 at 9–
13, 17, 22; Doc. 99 at 7–11).  The Court agrees.

The Third Amended Complaint makes clear that the Merchants Association
is a private company and Presseller is its manager.  (Doc. 97 at ¶¶ 9, 37).  Under 42
U.S.C. § 1983, "a plaintiff must prove (1) a violation of a constitutional right, and (2)
that the alleged violation was committed by a person acting under color of state
law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (citation omitted).
"[T]he under-color-of-state-law element of § 1983 excludes from its reach merely
private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins.
Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (cleaned up).  Three tests "determine
whether state action exists: (1) the public function test; (2) the state compulsion
test; and (3) the nexus/joint action test." *Willis v. Univ. Health Servs., Inc.*, 993
F.2d 837, 840 (11th Cir. 1993) (citation omitted).  Sheets makes allegations relating
to both the public function test and the nexus/joint action test.  (Doc. 97 at ¶¶ 21–
53.b, 58).

This Court previously concluded that the Merchants Association was not a
state actor but allowed Sheets the opportunity to amend his complaint.  (Doc. 73 at
8–9; Doc. 91).  This Court held that Sheets's allegations were "conclusory and

lack[ed] factual support," citing to precedent stating that private actors who
contract with government entities or possess permits to perform private functions
on public property are not state actors by default. (Doc. 73 at 6–8).

Sheets's Third Amended Complaint seeks to cure its previous deficiencies by
alleging that the relatively inexpensive annual lease between the City and the
Merchants Association suggests that the farmers' market was a collaboration with
the City and partially funded by it. (Doc. 97 at ¶¶ 25–33). Sheets also points to the
City's event manual to show "how intertwined [the City was] with the [Merchants
Association] and the level of control the City ha[d]." (*Id.* at ¶ 41).

Sheets cites to *Charles v. Johnson*, 18 F.4th 686, 696 (11th Cir. 2021) to
support his argument. There, the Eleventh Circuit held that there was no state
action when a civilian rendered brief *ad hoc* assistance to a law enforcement officer
without some proof of a conspiracy to violate another's constitutional rights.
Another case Sheets cites, *West v. Atkins*, 487 U.S. 42, 56–57 (1988), provides little
guidance because, there, the Supreme Court held that a contracted physician
working in a prison was a state actor.

The Court's conclusion remains the same: the fact that the Merchants
Association uses a section of downtown for its event does not make it a state actor.
*Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1278 (11th
Cir. 2003) ("[T]he mere fact that a private actor contracts with a governmental
entity does not mean that every action taken by the private actor can be attributed
to the government."). "State action is not established merely because a private

entity receives government funding or is subject to extensive government regulation." *Shepherd v. Wilson*, No. CV 15-00373-KD-N, 2015 WL 9685562, at *5 (S.D. Ala. Dec. 22, 2015) (citations omitted). Also, "the actions of a private organization temporarily using public property are not actions that can fairly be attributed to the state." *United Auto Workers, Loc. No. 5285 v. Gaston Festivals, Inc.*, 43 F.3d 902, 910 (4th Cir. 1995).

We turn first to the public function test, which "limits state action to instances where private actors are performing functions traditionally the exclusive prerogative of the state." *Willis*, 993 F.2d at 840 (cleaned up). Sheets provides no basis for the Court to conclude that managing a farmers' market is an exclusive government function. Even more, the Merchants Association has managed the farmers' market since its inception. (Doc. 97 at ¶ 14). These facts do not meet the public function test. *See, e.g.*, *Nat'l Broad. Co. v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988) (concluding that the public function test was not met because "selecting media stations to cover a speech has never been an exclusive function of the government").

Next, the "nexus/joint action test applies where the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Willis*, 993 F.2d at 840 (cleaned up). This test has also not been met because the City and the Merchants Association were not "intertwined in a symbiotic relationship." *Nat'l Broad. Co.,* 860 F.2d at 1027 (citation and internal quotation marks omitted). "[T]he symbiotic relationship must

involve the alleged constitutional violation." *Id* (citation omitted).  The Eleventh
Circuit has previously held that the nexus/joint action test is met when the state
requires and directs private actors to take actions ***related to the complained-of
conduct***.  *Focus on the Fam.*, 344 F.3d at 1278–79.

Sheets alleges that management of traffic flow, street closures, the nominal
fee charged to the Merchants Association for use of the property, and the Merchants
Association's required compliance with the City's event manual support a symbiotic
relationship between the two parties.  Even if the Court were to accept this tenuous
assertion, issuing a trespass warning is completely unrelated to the City's alleged
involvement in the farmers' market.  (Doc. 97 at ¶¶ 27.a, 39).  The City was
exercising its executive police power by issuing a trespass notice under applicable
law, not advancing some business interest connected to the farmers' market.

The facts simply do not suggest that either Presseller or the Merchants
Association was acting under color of state law.  Because Sheets has failed to allege
facts showing a sufficiently close nexus between the City and the private parties,
such that Presseller and the Merchants Association's conduct can be reasonably
attributed to the City itself, and because hosting a farmers' market is not a
traditional government function, the claims against Presseller and the Merchants
Association are dismissed.

## II.    Counts I and V: Viewpoint Discrimination

Sheets's First Amendment viewpoint discrimination claim under section 1983
against Officer Lipker fails because Sheets does not allege a viewpoint that was the

basis of his trespass. "A restriction on speech constitutes viewpoint discrimination 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Jackson v. McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019) (quoting *Rosenberger v. Rector & Visitors of Univ. of Vir.*, 515 U.S. 819, 829 (1995)). Sheets fails to claim his restriction was motivated by a held ideology, opinion, or perspective. In fact, Sheets himself alleges that his video footage is "unbiased and nonpolitical." (Doc. 97 at ¶ 3). Sheets alleges that others were allowed while he was asked to cease filming at the farmers' market. (*Id.* at ¶¶ 70–74). To the extent Sheets intended to allege a selective enforcement claim, the claim nonetheless fails because he still does not allege a *viewpoint* that was the basis of his trespass. *See Sheets*, 2024 WL 5090058, at *3 ("Although Plaintiff alleges others were permitted to record in the Public Safety Complex without repercussion, he does not claim his restriction was based on a held ideology, opinion, or perspective."). Thus, Sheets fails to allege viewpoint discrimination, and Count I is therefore dismissed with prejudice.[4]

Because the viewpoint discrimination claim fails, the *Monell* claim against the City for viewpoint discrimination fails, too. *See Henning v. Walmart Stores Inc.*, 738 F. App'x 992, 999 (11th Cir. 2018) ("Without evidence that his constitutional rights were violated, Henning's § 1983 municipal liability claim against Brevard County fails as a matter of law."); *Watkins v. Ramcharan*, No. 1:18-CV-62335-UU,

---

[4] Even if Count I were to properly state a viewpoint discrimination claim, Officer Lipker is entitled to qualified immunity for the reasons stated in Discussion, Section III of this order.

2018 WL 9437299, at *1 (S.D. Fla. Oct. 3, 2018) ("Because there is no constitutional

injury here, Plaintiff has not stated a plausible *Monell* claim."); *Stringer v. Doe*, No.

5:11CV1/RS/EMT, 2011 WL 2838128, at *7–8 (N.D. Fla. June 16, 2011) (finding the

plaintiff failed to state a failure to train claim when the plaintiff also failed to allege

a constitutional violation by a non-supervisory actor).  The Court will provide an

opportunity to state a sufficient claim against the City on this ground.  Thus, Count

V against the City is dismissed without prejudice.

## III.    Counts II and III: Prior Restraint and Retaliation

Turning to the remaining claims against Officer Lipker in his personal

capacity, Officer Lipker asserts that he is entitled to qualified immunity, ultimately

shielding him from liability.  (Doc. 100 at 2).  "A motion to dismiss a complaint on

qualified immunity grounds will be granted if the complaint fails to allege the

violation of a clearly established constitutional right." *Griffin Indus., Inc. v. Irvin*,

496 F.3d 1189, 1199 (11th Cir. 2007) (cleaned up).  Officer Lipker must show that

he was acting within the scope of his "discretionary authority" when he trespassed

Sheets, meaning his actions "(1) were undertaken pursuant to the performance of

his duties, and (2) were within the scope of his authority."  *Hinson v. Bias*, 927 F.3d

1103, 1116 (11th Cir. 2019) (cleaned up).  Officer Lipker was acting within his

discretionary authority as a police officer when he issued Sheets the trespass

warning.  *See Patrick v. McGuire*, No. 8:24-CV-999-MSS-NHA, 2024 WL 4803217,

at *4 (M.D. Fla. Nov. 15, 2024) (officers, while acting as on-duty police officers

performing investigative functions, acted within their discretionary authority when they threatened to arrest the plaintiff if she did not heed a trespass warning).

The burden then shifts to Sheets to overcome the qualified immunity defense by showing: (1) Officer Lipker violated a constitutional right and (2) the right was clearly established. *Griffin Indus., Inc.*, 496 F.3d at 1199. If Sheets is unable to show that Officer Lipker violated a clearly established constitutional right, then Officer Lipker is entitled to qualified immunity. *Swinford v. Santos*, 121 F.4th 179, 191 (11th Cir. 2024) (holding that officers were entitled to qualified immunity when no constitutional violation was committed). Officer Lipker is entitled to qualified immunity on Counts II and III.

The Third Amended Complaint alleges that Officer Lipker's "decision to trespass Andrew Sheets for filming from sidewalks and public roadways, did cause a prior restraint on Mr. Sheets['] [f]ree [p]ress." (Doc. 97 at ¶ 140). Sheets alleges that the trespass amounted to a prior restraint that lasted for one year. (*Id.*). "Prior restraints contrast with subsequent punishments, which regulate a given type of speech by penalizing the speech only after it occurs." *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1223 (11th Cir. 2017) (cleaned up). Officer Lipker's issuance of a trespass warning in response to Sheets's conduct was a subsequent punishment. *See, e.g.*, *Coley-Pearson v. Martin*, 689 F. Supp. 3d 1339, 1370 (S.D. Ga. 2023) (finding that a trespass warning was not a prior restraint because it was issued after the plaintiff's conduct occurred). Now, whether the duration of the trespass warning preventing Sheets from returning to the area of the farmers'

market constituted a prior restraint is less clear, and Sheets provides nothing substantive in his response to support his position. (Doc. 105 at 19). In a similar case brought by Sheets in the Middle District, Judge Chappell concluded that qualified immunity applied to a prior restraint claim because Sheets failed to provide the court with authority or explanation as to how the "issuance of [a] trespass warning—framed as a prior restraint—violated clearly established constitutional rights of which a reasonable person would have known." *Sheets v. Prummell*, No. 2:24-CV-943-SPC-NPM, 2025 WL 712805, at *5 (M.D. Fla. Mar. 5, 2025). Sheets also fails to sustain his burden here. Therefore, qualified immunity shields Officer Lipker from liability, and Count II is dismissed with prejudice.

Moving to the retaliation claim, "[r]etaliation against the exercise of First Amendment rights is a well-established basis for section 1983 liability." *O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1370 (S.D. Fla. 2016) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1255–56 (11th Cir. 2005)). A plaintiff must show "(1) the plaintiff engaged in speech or an act that was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech or act, and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally-protected speech or act." *Id.*

Sheets alleges that he has a First Amendment right to film individuals at the farmers' market, and that Officer Lipker retaliated against him for exercising what he believes was his First Amendment right. (Doc. 97 at ¶¶ 147–48). Presseller argues that the retaliation claim fails because Sheets was not engaged in

constitutionally protected speech. (Doc. 98 at 17). Officer Lipker argues that he is entitled to qualified immunity because he had arguable probable cause to issue a trespass warning. (Doc. 100 at 9–12). He also argues that it is not "clearly established" that filming is constitutionally protected speech. (*Id*. at 12–15).

Guided by the qualified immunity analysis framework, the relevant inquiry is whether Sheets has met *his* burden to overcome the qualified immunity defense by showing: (1) Officer Lipker violated a constitutional right and (2) the right was clearly established. *Griffin Indus., Inc.*, 496 F.3d at 1199. To demonstrate that a right is "clearly established," the Eleventh Circuit provides plaintiffs the following options: (1) reliance on a "materially similar decision of the Supreme Court, of this Court, or of the supreme court of the state in which the case arose[,]" (2) invocation of a "broader, clearly established principle that controls the novel facts[] of the case[,]" or (3) showing that the officer's acts "so obviously violate the Constitution that prior case law is unnecessary." *Brooks v. Miller*, 78 F.4th 1267, 1280 (11th Cir. 2023) (cleaned up). "If a plaintiff proceeds under the first or second method, he must point to a court decision." *Id.* "The second and third methods require obvious clarity[,]" meaning "the principle must be so apparent that, even without a case with similar facts to light the way, any competent officer would know that his conduct crossed the line." *Id.* (cleaned up).

Here, Sheets provides the Court with little to no argument or support to show that Officer Lipker violated his clearly established constitutional rights. The Supreme Court has stated that a "clearly established right must be defined with

13

specificity." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019). Sheets attempts to show that his right was "clearly established" by pointing to a "broader, clearly established principle that controls the novel facts[] of the case[.]" *Brooks*, 78 F.4th at 1280 (cleaned up). Sheets argues that "[c]learly established law allows for video taping in public forum[s]." (Doc. 105 at 7). Yet, Sheets immediately quotes a case that only supports the principle that access to publicly owned streets, sidewalks, and parks cannot be *denied absolutely*. *Lloyd Corp. v. Tanner*, 407 U.S. 551, 559 (1972). Sheets also cites to an Eleventh Circuit case holding that plaintiffs had a First Amendment right—subject to reasonable time, manner, and place restrictions—to videotape police conduct. *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).[5] Here, Sheets's rights were not denied *absolutely*; he was restricted access to a portion of the City's downtown area only on Saturdays for one year. (Doc. 106-1 at 60).

Stated simply, Sheets has not met his burden of showing that he had a clearly established right to be given unbridled access to film at the farmers' market. In fact, Sheets' cited case law supports the contrary: First Amendment rights cannot be denied *absolutely* but are "subject to reasonable time, manner, and place restrictions[.]" *Smith*, 212 F.3d at 1333; *Lloyd Corp.*, 407 U.S. at 559.

---

[5] Sheets also quotes *Moms for Liberty - Brevard Cnty. v. Brevard Pub. Schs.*, 118 F.4th 1324, 1331 (11th Cir. 2024) for the principle that the First Amendment does not allow the government to regulate speech in a way that favors some viewpoints and not others. (Doc. 105 at 8). Yet, as the Court has already concluded, Sheets fails to allege a particular viewpoint.

To the extent Sheets' constitutional rights *may* have arguably been violated, there is "nothing to suggest that the contours of those rights were defined enough to give the defendants 'fair notice' that their conduct violated [Sheets'] constitutional rights in the specific context of this case." *In re Watkins*, No. 23-10359, 2023 WL 5664171, at *2 (11th Cir. Sept. 1, 2023) (citation omitted).  The Court also notes that this is not the first time Sheets has failed to meet his burden of demonstrating that an officer's conduct was unlawful.  *Sheets*, 2024 WL 5090058, at *3 (finding officers were entitled to qualified immunity in part because plaintiff failed to meet his burden when only conclusory assertions were provided and there was "nothing of substance" in his response to the motion to dismiss).

Thus, qualified immunity shields Officer Lipker from individual liability because Sheets did not meet his burden of showing that Officer Lipker violated a clearly established constitutional right.  *Ratlieff v. City of Fort Lauderdale*, 748 F. Supp. 3d 1202, 1259 (S.D. Fla. 2024) (finding the plaintiff did not overcome a qualified immunity defense when the plaintiff failed to identify "some other precedent from the Supreme Court, the Eleventh Circuit, or the Florida Supreme Court standing for an analogous proposition"); *Henning,* 738 F. App'x at 998 (holding that qualified immunity applied to an officer when the plaintiff failed to show that his constitutional rights had been violated).  Count III against Officer Lipker is dismissed with prejudice.

IV.    **Count IV: Procedural Due Process**

Sheets alleges that the inability to appeal trespass warnings violates procedural due process under the Fifth and Fourteenth Amendments.  (Doc. 97 at ¶ 163).  Since the Fifth Amendment's Due Process Clause applies only to the federal government, the Court only evaluates the claim under the Fourteenth Amendment. *Strickland v. City of Dothan, Ala.*, 399 F. Supp. 2d 1275, 1284 (M.D. Ala. 2005); *Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1041 (11th Cir. 1989).  Under the Fourteenth Amendment, states cannot "deprive any person of life, liberty, or property, without due process of law[.]"  To state a procedural due process claim, plaintiffs must show "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (cleaned up). Here, the City argues that the first and third elements are at issue.  (Doc. 101 at 6, 7, 9).  The City also argues that the burden placed on Sheets's First Amendment rights was merely "incidental," incorrectly relying on *Wright v. City of St. Petersburg, Fla.*, 833 F.3d 1291, 1298 (11th Cir. 2016), where the Eleventh Circuit found that the plaintiff's conduct (obstructing a police investigation and resisting arrest) was not expressive activity protected by the First Amendment.  (Doc. 101 at 9).  That case is not instructive here because the Eleventh Circuit has concluded that, subject to reasonable time, place, and manner restrictions, video recording in public areas is an activity protected by the First Amendment.  *Smith*, 212 F.3d at 1333 ("[Plaintiffs] had a First Amendment right, subject to reasonable time,

manner, and place restrictions, to photograph or videotape police conduct");

*Hoffman v. Delgado*, No. 23-13213, 2025 WL 25856, at *2 (11th Cir. Jan. 3, 2025)

("Recording falls within the ambit of First Amendment guarantees.").

The Court's first inquiry is whether Sheets has sufficiently alleged a

deprivation of a constitutionally protected liberty interest. The Eleventh Circuit

has held that the first step is to identify "what interest Plaintiffs allege they

possessed (and then have been deprived of) in the first place." *Catron*, 658 F.3d at

1266. Sheets alleges that his liberty interest in occupying public sidewalks and

roadways while filming was deprived by the trespass warning. (Doc. 97 at ¶¶ 156,

158).

Since video recording in public spaces could implicate First Amendment

rights, the Court must employ a forum analysis to determine whether a

constitutionally-protected liberty interest exists. *Patrick*, 2024 WL 4803217, at *5

(stating that Eleventh Circuit precedent requires courts to apply a forum analysis

to First Amendment claims). The Supreme Court recognizes the following forums:

"the traditional public forum, the designated public forum, the limited public forum,

and the nonpublic forum." *McDonough v. Garcia*, 116 F.4th 1319, 1325 (11th Cir.

2024). "The quintessential examples [of traditional public forums] are streets and

parks." *Id.* at 1323. Liberally construing Sheets' Third Amended Complaint, as

required for a pro se plaintiff, the Court assumes Sheets is alleging that despite the

alleged existence of a lease, the property maintained its status as a traditional

public forum. *United States v. Cordero*, 7 F.4th 1058, 1068 n.11 (11th Cir. 2021).

Neither party disputes the classification of the farmers' market as a traditional public forum.  Accordingly, the Court will assume without deciding that the farmers' market area is a traditional public forum.  *Beasley v. City of Atlanta*, No. 1:11-CV-03801-AJB, 2012 WL 13012623, at *11 (N.D. Ga. Aug. 30, 2012) (classifying a park as a traditional public forum on a motion to dismiss when neither party disputed such).

With a traditional public forum, a plaintiff has a liberty interest, for purposes of due process, to occupy City-owned property, but it does not exist "under all conditions and at all times."  *Catron*, 658 F.3d at 1267 n.5; *Peery v. City of Mia.*, 977 F.3d 1061, 1071 (11th Cir. 2020) ("So even if a permanent deprivation of access to public spaces might violate the Due Process Clause, there is no constitutional right to use public parks under all conditions and at all times.") (cleaned up).  Rather, the constitutional right is limited to the use of these spaces under their "ordinary conditions in which [they] are made available to the general public."  *Catron*, 658 F.3d at 1267 n.5.  "[A] time, place, and manner restriction can be placed on speech in a traditional public forum if it is content neutral, narrowly tailored to achieve a significant government interest, and leaves open ample alternative channels of communication."  *McMahon v. City of Panama City Beach*, 180 F. Supp. 3d 1076, 1093 (N.D. Fla. 2016) (citation omitted).

In *McMahon v. City of Panama City Beach*, in the context of a preliminary injunction, the Court found that a "free, open-to-the-public event held on a traditional public forum" was still a traditional public forum, despite a permit

agreement granting a license for exclusive use. *Id.* at 1099. There, the Court found
that Panama City Beach's policy of deferring to the lessees' decisions about whom to
exclude from the property was not a reasonable time, place, and manner restriction
because the government had no interest that was served by such a policy. *Id.* at
1105–07. So, the question here is whether the trespass warning, which only
prohibits Sheets from occupying the property one day a week for one year, is a
reasonable time, place, and manner restriction. The City completely fails to argue
in support of its position. "When the Government restricts speech, the Government
bears the burden of proving the constitutionality of its actions." *United States v.
Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000) (citations omitted). Thus,
"[Sheets'] factual allegations that the City prohibited [him] from being . . . on public
sidewalks . . . lead us to conclude that 'there is more than a sheer possibility' that
[Sheets] ha[s] been deprived of a constitutionally protected liberty interest."
*Catron*, 658 F.3d at 1266 (quoting *Iqbal*, 556 U.S. at 678).

The Court's last inquiry is whether there was a constitutionally inadequate
process. The trespass warning itself does not provide any means to challenge or
appeal the warning. (Doc. 106-1 at 60). Sheets alleges that the trespass warning
"provides no procedural means for a warning-recipient to challenge the warning[.]"
(Doc. 97 at ¶ 164). This is sufficient to show a constitutionally inadequate process
at this stage. *McArdle v. City of Ocala, Fla.*, 519 F. Supp. 3d 1045, 1054 (M.D. Fla.
2021) (finding the absence of a constitutionally adequate process when "the trespass
warning provides no procedural means for a recipient to challenge it").

Thus, Sheets has plausibly alleged a claim for procedural due process and Count IV will not be dismissed against the City, at least at this early stage of litigation.

## V.    Count VI: Ordinance 15-48

Sheets alleges that Punta Gorda Ordinance 15-48 violates the Constitution because it is neither reasonable nor viewpoint neutral as applied to public sidewalks.  (Doc. 97 at ¶ 179).  The Eleventh Circuit described the ordinance as a "ban [on] recording in city-owned buildings."  *Hoffman*, 2025 WL 25856, at *3 (concluding that the anti-recording ordinance was reasonable and viewpoint neutral and, thus, constitutional).  The ordinance itself states that "video recording anywhere inside of City buildings" is prohibited without the approval of the city manager.  PUNTA GORDA, FLA., CODE OF ORDINANCES ch. 15, § 15-48(h)(15) (2024).  The ordinance also prohibits video recording "within City-owned, controlled, or leased property, without the consent of all persons whose voice or image is being recorded."  § 15-48(e).  Here, Sheets was not inside a City building at the time the trespass warning was issued.

Sheets fails to respond to the City's argument that the ordinance has no relation to the trespass warning. (Doc. 101 at 14).  "[W]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."  *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (cleaned up).  But the Court will provide Sheets some leeway because he is proceeding pro se.  Being that the ordinance only applies to recording *inside* city-

owned buildings, Sheets has not plausibly alleged that the ordinance was the
reason for the trespass warning's issuance, and Sheets's claim is deemed
abandoned, Count VI is dismissed with prejudice.

## VII.    Count VII: Conspiracy

Sheets alleges that Presseller, the Merchants Association, and the City
conspired to violate his rights by executing a lease between the Merchants
Association and the City.  (Doc. 97 at ¶ 187).  Presseller argues that the conspiracy
claim is time-barred (Doc. 98 at 18–20), is subject to dismissal because it contains
only conclusory allegations (*id*. at 21–22), and is barred by either the intracorporate
conspiracy doctrine or the fact that Presseller and the Merchants Association are
private actors (*id*. at 22).  The Merchants Association similarly argues that the
conspiracy claim should be dismissed because Sheets offers only bare legal
conclusions.  (Doc. 99 at 12).  The City argues that Sheets failed to show that
Presseller, the Merchants Association, and the City ever reached an agreement to
violate Sheets's rights, the claim is time-barred, the claim is barred by the
intracorporate conspiracy doctrine, and that Sheets impermissibly added the claim
to the Third Amended Complaint.  (Doc. 101 at 15–17).

The Court focuses its attention on the fact that this is Sheets's third time
amending his complaint, but it is the first time this claim has been pleaded.  This
Court's January 6, 2025 Order stated that amendment of Sheets's complaint was
limited to "correct[] the deficiencies outlined in the Report and Recommendation[.]"
(Doc. 91 at 2).  Sheets, ignoring the Court's directive, added a new count against

Presseller, the City, and the Merchants Association for "[c]onspiracy to violate the
First Amendment." (Doc. 97 at ¶¶ 185–91). Sheets may only proceed with this
claim after seeking the Court's leave. *Donoff v. Delta Air Lines, Inc.*, No. 18-81258-
CV, 2019 WL 13066910, at *2 (S.D. Fla. Oct. 11, 2019) (concluding that the scope of
amendment permitted under a prior order on a motion to dismiss was limited to
amendments that rectified the complaint's deficiencies—not the addition of
completely new claims). Thus, Count VII is dismissed without prejudice.

**CONCLUSION**

Accordingly, it is **ORDERED** that:

(1) Jerry Presseller's Motion to Dismiss (Doc. 98) is **GRANTED.** Counts I, II,
III, and VII are dismissed with prejudice.

(2) Punta Gorda Downtown Merchants Association's Motion to Dismiss (Doc.
99) is **GRANTED**. Counts V and VII are dismissed with prejudice.

(3) Officer David Joseph Lipker's Motion to Dismiss (Doc. 100) is **GRANTED**.
Count I against Officer Lipker in his official capacity is dismissed with
prejudice. Counts II and III against Officer Lipker in his official capacity
are dismissed with prejudice. Count I against Officer Lipker in his
individual capacity is dismissed with prejudice. Officer Lipker, in his
individual capacity, is entitled to qualified immunity on Counts II and III
and are dismissed with prejudice.

(4) The City of Punta Gorda's Motion to Dismiss (Doc. 101) is **GRANTED IN PART AND DENIED IN PART.**  Counts V and VII are dismissed without prejudice.  Count VI is dismissed with prejudice.

(5) The Clerk of Court is **DIRECTED** to enter judgment accordingly in favor of Defendants Jerry Presseller, Punta Gorda Downtown Merchants Association, and Officer David Joseph Lipker, and against Plaintiff.  The Clerk is **DIRECTED** to terminate those Defendants from this case.

(6) Plaintiff may file a Fourth Amended Complaint within **FOURTEEN (14) days** from the date of this Order. Failure to do so will result in the closure of the case without further notice.  Any forthcoming complaint shall be limited to correcting the deficiencies outlined in this Order and the counts dismissed **without prejudice**.  **NO NEW CLAIMS** may be raised without leave of the Court, including the unauthorized addition of Claim VII in the Third Amended Complaint.  Any forthcoming complaint shall, as consistent with this Order, remove the claims dismissed with prejudice. This will be the final amendment permitted, absent a showing of extraordinary circumstances.

**ORDERED** in Fort Myers, Florida on September 2, 2025.


JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE


23