UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

    Plaintiff,

v.

CITY OF PUNTA GORDA,

    Defendant.

_____/

Case No. 2:24-cv-495-KCD-DNF

# ORDER

Andrew Sheets is a self-proclaimed citizen journalist. Years ago, he took his camera to the Punta Gorda Farmers Market to shop and interview vendors. The market's manager, Jerry Presseller, was none too pleased with the production. Unable to get Sheets to leave, he called the police. Officer David Lipker arrived and issued a trespass warning that did not just eject Sheets for the day but banned him from the market for a full year. (Doc. 155-3.)[1] We have a front-row seat to the dispute, as the entire event was captured on Sheets's body camera. (Doc. 100-1.)

Sheets, proceeding pro se, argues that his constitutional rights were violated. The case has been pruned since its filing (*see* Doc. 163), leaving two claims against the City of Punta Gorda: (1) procedural due process under the

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Fourteenth Amendment for the City's failure to provide a process to challenge the trespass warning, and (2) violations of the First Amendment. (Doc. 170.) The City has moved for summary judgment, asserting that Sheets has failed to establish that his First Amendment rights were violated or, even assuming such a violation, that it was the product of any unconstitutional municipal custom or policy. (Doc. 177.) Sheets has responded (Doc. 183), making this matter ripe. For the reasons below, the motion is **GRANTED IN PART AND DENIED IN PART**.

## I. Background

The farmers market is a weekly staple in downtown Punta Gorda, taking place nearly every Saturday. While the event takes place on City streets, it is operated by the Downtown Merchants Association and Jerry Presseller under a "Temporary Conditional Use Permit." (Doc. 154-5 at 24.)[2] In effect, the City rents the public square to the Merchants Association. The record even provides a bird's-eye view of the layout, showing just how the market transforms the downtown grid:

---

[2] For ease of reference, the Court will use the page numbers generated by its electronic filing system for all composite exhibits and filings.



(*Id.* at 16.)

According to Sheets, on May 30, 2020, he was at the market to shop and interview vendors about the market's decision to switch "from a public place into a rented place." (Doc. 154-4 at 133:16-134:22, 160:3-11.) He was also doing a story "on if you have the right to record and about Covid." (*Id.* at 242:16-21.) This was not Sheets's first visit—he had been to the market before without incident—and he spent about thirty minutes talking with vendors before he caught Presseller's attention. (*Id.* at 135:16-21.)

Sheets knew the space was rented—Presseller told him as much—and Presseller made it clear he did not want Sheets there if he was "going to be a pest." (Doc. 154-4 at 162:16-19; Doc. 100-1 at 3:35-3:50.) When the conversation soured, Presseller called the police. (Doc. 100-1 at 6:42-8:57.) The two then stood together, waiting for law enforcement to arrive, during which Presseller

3

insisted he was not opposed to free speech or the right to record. (*Id.* at 9:07-15:10.)

When Officer Lipker arrived, the dispute crystallized. Presseller demanded that Sheets be trespassed, claiming the issue was the disturbance Sheets was causing, not his filming. (Doc. 154-7; Doc. 154-8 at 3; Doc. 100-1 at 15:11-15:21.) Officer Lipker obliged. He took Sheets aside and told him that he was being trespassed from the market. (Doc. 100-1 at 15:22-15:24.) Sheets protested that the officer had not initiated the action—that it was "all Jerry"—but he viewed the City as the ultimate antagonist, trying to "ticket [him] to death" to stifle his reporting. (Doc. 154-4 at 164:4-9, 165:9-12, 166:15-19, 167:3-7, 167:23-168:1.)

The encounter moved to Officer Lipker's patrol vehicle, where the trespass warning was formalized. Officer Lipker explained that because Presseller rented the space and found Sheets to be a disturbance, he had to leave the area. (Doc. 100-1 at 15:25-18:16.) The City's subsequent event report flagged the behavior as "harassing." (Doc. 154-1.) Notably, Officer Lipker never asked Sheets to stop filming. (Doc. 154-9 ¶ 11.)

Sheets later went to the police station to pick up the written warning—a visit he also captured on video. (Doc. 100-1 at 19:15-23:00.) There, Officer Lipker reiterated the market's boundaries. But Sheets left with a grievance

4

that went beyond the ban itself: he claims he had "no way to challenge" the warning he had just been handed. (Doc. 154-4 at 176:8-177:7.)

In the complaint, Sheets alleges one other trespass warning he received at the market in March 2022. (Doc. 170 ¶ 15; Doc. 154-4 at 205:6-17.) He testified that other "similar incidents" occurred at different locations and for different reasons. (Doc. 154-4 at 207:2-17.) Sheets again visited the market in 2024 and was not approached or trespassed. (*Id.* at 261:19-262:7.)

## II. Legal Standard

Summary judgment is not a substitute for trial. It is appropriate only "when a movant shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." *Gonzalez v. Indep. Ord. of Foresters*, No. 24-10758, 2025 WL 337898, at *2 (11th Cir. Jan. 30, 2025). "When deciding a motion for summary judgment, a judge is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2023 WL 8978168, at *1 (M.D. Fla. Dec. 28, 2023). "An issue is genuine if a reasonable jury could return a verdict for the nonmoving party." *Do v. Geico Gen. Ins. Co.*, No. 1:17-CV-23041-JLK, 2019 WL 331295, at *2 (S.D. Fla. Jan. 25, 2019).

"The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no

5

genuine issues of material fact to be determined at trial." *Andrews v. Ciccone*, No. 3:23-CV-88-MMH-SJH, 2025 WL 2508878, at *2 (M.D. Fla. Sept. 2, 2025). "[A] fact is material if it may affect the outcome of the case under the applicable substantive law." *Toca v. Debonair Props. LLC*, No. 2:23-CV-303-KCD, 2025 WL 2106674 (M.D. Fla. July 28, 2025).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). This requires the nonmovant to "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports [its] claim." *Alexander as trustee of Franklin Pharmacy, LLC v. Aaron*, No. 3:15-CV-1314-AKK, 2017 WL 11437294, at *1 (N.D. Ala. June 1, 2017); *see also Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 177 (5th Cir. 2016).

### III. Discussion

**A. Fourteenth Amendment Procedural Due Process**

We start with Sheets's winning argument. He alleges that the inability to challenge or appeal the trespass warning violates procedural due process under the Fourteenth Amendment. (Doc. 170 at ¶ 25; Doc. 183 at 15.) Sheets "repeatedly ask[ed] the police how … can I challenge this." (Doc. 154-4 at 177:1-

6

7.) They allegedly said there is no process. The City does not argue otherwise. He also asked City officials, but was likewise told there is no way to challenge the trespass warning. (Doc. 154-4 at 177:11-19.) Here is a copy of the citation:

**WARNING CITATION**
YOU ARE HEREBY OFFICIALLY WARNED OF THE BELOW DESCRIBED VIOLATION.
YOUR ONLY REQUIRED ACTION IS TO EXERCISE SAFER DRIVING HABITS IN THE FUTURE

**PUNTA GORDA POLICE DEPARTMENT**

E74354

COUNTY OF: CHARLOTTE
CITY (IF APPLICABLE): PUNTA GORDA
DAY OF WEEK: SATURDAY
MONTH: 05
DAY: 30
YEAR: 2020
11:05 PM
NAME (PRINT) FIRST: ANDREW
MIDDLE: BRYANT
LAST: SHEETS

Marsys Law
Marsys Law   W   M   510
Marsys Law
STATE: FL   CLASS: E   2017

216 TAYLOR ST/HERALD CT

**VIOLATIONS**

☒ OTHER: TRESPASS WARNING
COMMENTS PERTAINING TO VIOLATION:
DO NOT RETURN DWNTWN FARMERS MARKET AREA MIN 1 YEAR OR FACE ARREST - SATURDAYS

BADGE NO. 170

**WARNING CITATION**
Case # 2001752

(Doc. 183 at 14.)

"There can be no doubt that, at a minimum, the Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of

7

life, liberty or property at the hands of the government." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). "[I]t is equally clear that the government must provide the requisite notice and opportunity for a hearing at a meaningful time and in a meaningful manner[.]" *Id.* "If the government fails to comply with the dictates of the Due Process Clause, the aggrieved party can seek compensatory damages and equitable relief under 42 U.S.C. § 1983." *Id.* (citing *McKinney v. Pate*, 20 F.3d 1550, 1555, 1557 (11th Cir. 1994)).

A procedural due process claim, like brought here, thus has three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden*, 345 F.3d at 1232.

Before assessing these elements, a few overarching arguments need attention. First up, the City insists that Sheets's due process claim must fail because it rests entirely on the misapplication of Ordinance 15-48. (*See* Doc. 177 at 10 ("Plaintiff's sole basis for his procedural due process claim against the City is that Ordinance 15-48 was applied against him.")). But that argument knocks down a straw man. Sheets's latest complaint does not challenge Ordinance 15-48. Indeed, that provision is nowhere mentioned. Sheets's grievance is simple: the City used its police power to ban him from a public marketplace for a year without giving him a way to contest the decision.

8

The application (or misapplication) of Ordinance 15-48 is simply not part of this case.

Next, the City argues that Sheets "has not shown that he was subject to trespass because of some sort of First Amendment activity." (Doc. 177 at 8.) But that conflates the *reason* for the deprivation with the *right* to contest it. The Due Process Clause does not protect only innocent people—it protects everyone who is deprived of a liberty interest. Whether Sheets was banned for filming, for causing a disturbance, or for wearing a loud shirt is a question of fact. And the entire point of procedural due process is to provide a forum where such facts can be disputed. The City essentially argues that because it had a good reason to ban Sheets, it did not need to provide him a hearing. That logic works backward. The purpose of the hearing is to determine *if* the City had a good reason. To say that the validity of the trespass excuses the lack of process would leave the Due Process Clause a nullity.

Not done yet, the City faults Sheets for his inaction, arguing that his due process claim must fail because he "made little, if any, effort to challenge the trespass" and "did not file an action" to contest it. (Doc. 177 at 10.) This argument turns the Due Process Clause on its head. The Constitution places the burden on the government to provide a clear path for relief. The City cannot fail to establish an appeals process and then penalize Sheets for failing to find it. According to Sheets, City officials denied the existence of any procedure to

9

challenge the trespass warning. And the City has offered no mechanism here—no form to file, no official to petition, and no hearing to request. Contrary to the City's suggestion, a federal civil rights lawsuit is not the process the Constitution contemplates for a simple trespass warning. Litigation is the remedy for a constitutional violation, not the procedure that prevents it. The failure here lies not in Sheets's lack of effort, but in the City's apparent lack of a door for him to knock on.

Turning back to the elements of a procedural due process claim, Sheets must first show "a deprivation of a constitutionally-protected liberty or property interest." *Grayden*, 345 F.3d at 1232. The outcome of this inquiry turns on whether the ground beneath Sheets's feet was public or private.

If the farmers market is considered public space, Sheets has a case. "Plaintiffs have a constitutionally protected liberty interest to be in parks or on other city lands of their choosing that are open to the public generally." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011). "[A]n individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is a part of our heritage, or the right to move to whatsoever place one's own inclination may direct." *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999).

If the farmers market is more like private property, however, Sheets has a problem. That is because citizens have no liberty interest in remaining on

land where they have no right to be. *See, e.g.*, *Watkins v. Willson*, 824 F. App'x 938, 940 (11th Cir. 2020) (explaining there is no "constitutionally protected liberty interest in remaining on private property"); *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008) (citizen had no liberty interest in access to town's community center). The City urges the Court to adopt this latter view. It contends that the exclusive-use permit held by the Merchants Association transformed the downtown streets into a private enclave, stripping Sheets of any constitutional right to be there.

But on the current record, that transformation is far from certain. While the City points to the permit as proof of privatization, the document itself is silent on the critical question of exclusion. (Doc. 154-5.) The City does not offer a single line from the permit that grants the Merchants Association the authority to strip citizens of their liberty interests or to banish them from public thoroughfares. Nor does the City offer any other controlling document—like a lease or a contract—that defines the scope of rights granted to Pressler or the Merchants Association. *See, e.g.*, *Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012) (holding that a festival sponsored by a private entity did not convert the city streets to a non-public forum because "it [was] a public festival, held on public city streets, free and open to all members of the general public").

11

We are effectively asked to take the City's word for it that the temporary permit converted a public street into a private fiefdom. Yet the farmers market operates on sidewalks and roads—places that have "immemorially been held in trust for the use of the public." *Hague v. CIO*, 307 U.S. 496, 515 (1939). The City has not demonstrated, as a matter of undisputed fact, that the permit legally extinguished the public character of the forum or the liberty interests of the citizens walking through it. At this stage, where the Court must draw all reasonable inferences in Sheets's favor, we cannot assume the public square became a private club based on an undefined permit. We must therefore proceed on the premise that the property remained public and that Sheets retained a right to be there. *See, e.g.*, *Bays v. City of Fairborn*, 668 F.3d 814, 820 (6th Cir. 2012) (recognizing that a community park hosting a private event that is open and free to the public remains a public forum); *Parks v. City of Columbus*, 395 F.3d 643, 652 (6th Cir. 2005) ("[T]he City cannot … claim that one's constitutionally protected rights disappear because a private party is hosting an event that remained free and open to the public.").

The City has one final arrow in its quiver: it argues that Sheets forfeited his right to be at the farmers market because he was disturbing the peace. (Doc. 177 at 16.) Two problems. First, this argument assumes the very fact that is in hot dispute. The City paints a picture of a harasser causing a scene. Sheets points to his video and claims he was a polite journalist asking questions on a

12

public sidewalk. At this stage, we cannot simply take the City's word for what happened. If Sheets is telling the truth—and on summary judgment, we must assume he is—then he was not a public nuisance; he was a citizen engaged in protected activity in a public forum. The City cannot defeat a due process claim by declaring that the plaintiff is guilty of the very conduct he denies. Whether Sheets actually forfeited his rights by his behavior is a question that cannot be answered on this record.

Second, the City's argument puts the cart before the horse. It contends that Sheets forfeited his liberty interest the moment he allegedly caused a disturbance. But until Officer Lipker handed him the citation, Sheets was not a trespasser in the eyes of the law; he was a citizen standing on a public street. *See Catron*, 658 F.3d at 1266 ("Before receiving a trespass warning, the warning-recipient is, by definition, not trespassing."). Sheets only became a trespasser *because* the City issued the warning. The City cannot use the result of that process—the determination that he was a trespasser—to justify the fact that there was no process. That reasoning travels in a circle. The purpose of a hearing is to determine whether Sheets actually committed the conduct that would justify the forfeiture of his rights. To say he has no right to a hearing because he is already guilty is to wipe the Due Process Clause off the books. *See McArdle v. City of Ocala, FL*, 519 F. Supp. 3d 1045, 1054 (M.D. Fla. 2021).

Accepting that the farmers market is public property, as the Court must on this record, Sheets has demonstrated the deprivation of a liberty interest. "Because there is a constitutionally protected liberty interest to visit the City's [streets] and [Sheets has] been deprived of access to those [areas], [he has] satisfied the first element of [his] due process claim." *Id.* at 1054.

Turning to the second element, state action, the answer is plain. It was Officer Lipker (a City employee, armed and on duty) who detained Sheets, issued the trespass warning, and backed that paper with the coercive power of the criminal law. "[C]ourts facing similar facts to this case—namely, a government threatening to enforce trespass ordinances during an event held on a traditional public forum—have not questioned state action." *McMahon v. City of Panama City Beach*, 180 F. Supp. 3d 1076, 1104 (N.D. Fla. 2016); *see also Stockstill v. City of Picayune*, No. 1:16CV4-LG-RHW, 2017 WL 3037431, at \*2 (S.D. Miss. July 18, 2017).

Finally, for the third element, the Court must determine whether a constitutionally adequate process was provided. The core of procedural due process is "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

The City offers not a meager process, nor a flawed one, but precisely none at all. It has not pointed to a single ordinance, regulation, or administrative

14

avenue that would allow a citizen to challenge such a trespass warning once issued. Nor does the citation itself fill the gap. The document handed to Sheets commands him not to return or face arrest, yet it provides no instructions on how to contest that command—no number to call, no form to file, and no deadline to meet. (Doc. 183 at 14.) As best the Court can tell, Officer Lipker's decision on the street corner was final, unreviewable, and etched in stone for a full year.

    The City suggests that, if Sheets felt aggrieved by his banishment, he should have taken it up with Presseller. (Doc. 177 at 10-11.) In the City's view, then, the proper avenue for relief was to plead with the shopkeeper. But this argument fundamentally misunderstands the source of the restraint. Sheets was not merely asked to leave a store by a manager; he was handed a citation by a uniformed police officer bearing the City's seal and threatening arrest. A private merchant may indeed control who stands at his booth, but he has no authority to issue—or rescind—a command backed by the criminal law. Once the City stepped in to formalize Sheets's exclusion from public land with the threat of arrest, it assumed the constitutional burden that comes with that power. To tell a citizen facing state-imposed incarceration that his only recourse lies with a private trade association is to outsource the Due Process Clause to a party with neither the duty nor the power to uphold it.

15

This procedural void flies in the face of established precedent. As the Eleventh Circuit explained in *Catron*, the risk of error is alarmingly high when a police officer can unilaterally banish a citizen from public grounds with the stroke of a pen. 658 F.3d at 1267. Mistakes happen. Officers may misunderstand the facts, confuse identities, or—as is alleged here—act on the biases of a private party. The Due Process Clause exists to catch those mistakes before they harden into long-term deprivations of liberty. By providing "no procedural means… to challenge the warning," the City has removed the safety net the Constitution requires. *Id.* at 1268. Because the record shows no procedural protections, let alone constitutionally adequate protections, for Sheets to challenge the trespass warning, the City's motion for summary judgment on the Fourteenth Amendment claim is denied.

## B. First Amendment

We turn next to the First Amendment claim, where Sheets faces a steeper hill to climb. He alleges that the City unlawfully "uses trespass warnings to stop [his] speech." (Doc. 170 at 13.)

To hold the City liable under the First Amendment, it is not enough to show that a police officer made a mistake or even violated the Constitution on a specific afternoon. A municipal government is not a parent liable for every misstep of its employees; it is responsible only for its own decisions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). *Monell* is a "case about

16

responsibility," and is meant to limit liability to acts that the local government body has "officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478, 480 (1986). "[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution[.]" *Monell*, 436 U.S. at 690.

Under this framework, municipal liability requires "(1) an express policy; (2) a widespread practice so permanent and well-settled that it constitutes a custom; or (3) an act or decision of an officer with final policy-making authority." *Boudreaux v. McArtor*, 681 F. App'x 800, 804 (11th Cir. 2017).

The parties spill considerable ink arguing whether Sheets has shown the deprivation of a constitutionally protected right under the First Amendment. But even assuming a constitutional violation, there is a more glaring issue: Sheets offers no evidence that the City adopted an unofficial custom or practice that was the "moving force" behind it. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

Sheets first attempts to prove an unofficial custom of suppressing speech by pointing to his own experience. He cites several trespass warnings he received while protesting on public sidewalks. (Doc. 170 at 7-11.) These handful of tickets, however, were issued *after* the farmers market incident we are here about. To state the obvious, subsequent events cannot establish a prior pattern of constitutional violations. *Connick v. Thompson,* 563 U.S. 51,

17

63 n.7 (2011). Nor has Sheets shown that these other encounters are factually similar to what occurred here. *See Poulin v. Bush*, 650 F. Supp. 3d 1280, 1304 (M.D. Fla. 2023) ("Where a Plaintiff relies on a pattern of complaints of unconstitutional conduct to show a custom, the complaints must have merit. The complaints must also concern factual situations that are substantially similar to the case at hand."). To establish a custom that carries the force of law, a plaintiff must show a pattern of unconstitutional conduct so persistent and widespread that the government's policymakers must have known about it and acquiesced to it. The undescribed encounters Sheets offers here (Doc. 170 ¶ 21) simply do not meet that high bar.

Sheets similarly argues that the City is liable for the "failure to train" its officers on viewpoint neutrality. (*Id.* at 15.) But this theory fails for the same reason: lack of notice. To hold a local government liable for a failure to train, the need for that training must be plainly obvious, usually demonstrated by a pattern of similar constitutional violations. *Connick*, 563 U.S. at 62. Sheets claims untrained City employees trespassed him on "three separate occasions." (Doc. 170 ¶ 30.) He also references two other trespasses for filming. (*Id.* ¶ 32.) Even accepting that these events occurred before the farmers market incident and are of sufficient factual similarity (which has not been shown), they are not enough to trigger liability. *See, e.g.*, *Prieto v. Metro Dade Cnty.*, 718 F. Supp. 934, 938-39 (S.D. Fla. 1989) (four isolated incidents involving only the

18

plaintiff fell well short of proving a persistent and widespread practice). "Establishing notice of a need to train or supervise is difficult." *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. City of Miami, FL*, 637 F.3d 1178, 1189 (11th Cir. 2011).[3]

Sheets's First Amendment claim hits a wall not because his speech was categorically unprotected, but because he has sued the wrong target. Section 1983 makes a city liable for its own illegal acts, not for every mistake made by an employee with a badge. Because Sheets has failed to identify a municipal policy, a widespread custom, or a deliberate failure to train that caused his injury, he cannot connect the City to the alleged violation. The Constitution prohibits the government from suppressing speech, but it does not make a municipality the insurer of every officer's conduct. Accordingly, the City is entitled to summary judgment on the First Amendment claim.

## IV. Conclusion

For these reasons, the City's Motion for Summary Judgment (Doc. 177) is **GRANTED IN PART AND DENIED IN PART**. The Fourteenth

---

[3] Liability for failure to train can also arise where "the need for more or different training is so obvious" that the government "can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Sheets does not make this argument here. And even if he did, it would not get him very far. This case does not present the kind of rare, flashing-red-light need for training that would allow a jury to find the City deliberately indifferent to its citizens' rights. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1329 (11th Cir. 2015).

Amendment claim survives, but judgment is entered in the City's favor on the First Amendment claim.

**ORDERED** in Fort Myers, Florida on January 21, 2026.

Kyle C. Dudek
United States District Judge