UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

      Plaintiff,

    v.

CITY OF PUNTA GORDA,

      Defendant.

_____/

Case No. 2:24-cv-495-KCD-KRH

## **ORDER**

This case was headed to trial, but the supplemental briefing requested by the Court makes it clear that we have to hit the brakes.

Plaintiff Andrew Bryant Sheets is a self-described citizen journalist who brought this civil rights lawsuit against the City of Punta Gorda. The underlying dispute stems from a trespass warning that banned Sheets from a local farmers market for a year. (*See* Doc. 170.)[1]

Several months ago, the Court dismissed the bulk of this case but allowed a procedural due process claim to proceed. (Doc. 206.) Sheets maintained that the City offered no process to challenge the trespass ticket. And because the City presented no ordinance, regulation, or administrative

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

safety net to counter that claim, we were left with a disputed issue about whether procedural due process was afforded to Sheets. (*Id.* 16.)

Fast forward to the pretrial conference. The City raised a dispositive argument not previously briefed. (*See* Doc. 231.) Specifically, it claimed that because Florida law provides adequate judicial remedies to challenge the trespass warning—such as a writ of mandamus or declaratory relief—Sheets cannot show a federal due process violation. The Court directed both parties to submit supplemental briefing. The City followed through (Doc. 234), but Sheets did not.

District courts possess inherent power to reconsider, modify, or vacate their own interlocutory orders before a final judgment. *See Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000). This ensures that courts can correct course before asking a jury and the parties to invest time and energy in a trial. Because the City's supplemental brief brings to light a legal roadblock to Sheets's procedural due process claim, the Court now reopens its summary judgment decision and dismisses the case.

## I. Background

These are the facts from the Court's prior order: The farmers market is a weekly staple in downtown Punta Gorda, taking place nearly every Saturday. While the event is held on City streets, it is operated by the Downtown Merchants Association and Jerry Presseller under a "Temporary Conditional

Use Permit." (Doc. 154-5 at 24.)[2] In effect, the City rents the public square to the Merchants Association. The record even provides a bird's-eye view of the layout, showing just how the market transforms the downtown grid:



(*Id.* at 16.)

According to Sheets, on May 30, 2020, he was at the market to shop and interview vendors about the market's decision to switch "from a public place into a rented place." (Doc. 154-4 at 133:16-134:22, 160:3-11.) He was also doing a story "on if you have the right to record and about Covid." (*Id.* at 242:16-21.) This was not Sheets's first visit—he had been to the market before without incident—and he spent about thirty minutes talking with vendors before he caught Presseller's attention. (*Id.* at 135:16-21.)

---

[2] For ease of reference, the Court will use the page numbers generated by its electronic filing system for all composite exhibits and filings.

Sheets knew the space was rented—Presseller told him as much—and Presseller made it clear he did not want Sheets there if he was "going to be a pest." (Doc. 154-4 at 162:16-19; Doc. 100-1 at 3:35-3:50.) When the conversation soured, Presseller called the police. (Doc. 100-1 at 6:42-8:57.) The two then stood together, waiting for law enforcement to arrive, during which Presseller insisted he was not opposed to free speech or the right to record. (*Id.* at 9:07-15:10.)

When Officer Lipker arrived, the dispute crystallized. Presseller demanded that Sheets be trespassed, claiming the issue was the disturbance Sheets was causing, not his filming. (Doc. 154-7; Doc. 154-8 at 3; Doc. 100-1 at 15:11-15:21.) Officer Lipker obliged. He took Sheets aside and told him that he was being trespassed from the market. (Doc. 100-1 at 15:22-15:24.) Sheets protested that the officer had not initiated the action—that it was "all Jerry"—but he viewed the City as the ultimate antagonist, trying to "ticket [him] to death" to stifle his reporting. (Doc. 154-4 at 164:4-9, 165:9-12, 166:15-19, 167:3-7, 167:23-168:1.)

The encounter moved to Officer Lipker's patrol vehicle, where the trespass warning was formalized. Officer Lipker explained that because Presseller rented the space and found Sheets to be a disturbance, he had to leave the area. (Doc. 100-1 at 15:25-18:16.) The City's subsequent event report

4

flagged the behavior as "harassing." (Doc. 154-1.) Notably, Officer Lipker never asked Sheets to stop filming. (Doc. 154-9 ¶ 11.)

Sheets later went to the police station to pick up the written warning— a visit he also captured on video. (Doc. 100-1 at 19:15-23:00.) There, Officer Lipker reiterated the market's boundaries. But Sheets left with a grievance that went beyond the ban itself: he claims he had "no way to challenge" the warning he had just been handed. (Doc. 154-4 at 176:8-177:7.)

In the complaint, Sheets alleges one other trespass warning he received at the market in March 2022. (Doc. 170 ¶ 15; Doc. 154-4 at 205:6-17.) He testified that other "similar incidents" occurred at different locations and for different reasons. (Doc. 154-4 at 207:2-17.) Sheets again visited the market in 2024 and was not approached or trespassed. (*Id.* at 261:19-262:7.)

## II. Discussion

When this Court reviewed the record a few months ago, Sheets's procedural due process claim checked all the boxes. To get past the starting line, a plaintiff raising a procedural due process claim must show: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

First, citizens "have a constitutionally protected liberty interest to be in parks or on other city lands of their choosing that are open to the public

5

generally." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011). Because the Punta Gorda farmers market operated on a public street and sidewalk, the Court concluded that Sheets had a liberty interest in walking through it. (Doc. 206 at 10.) So when the City banned him from that area for an entire year, it deprived him of a protected liberty interest. *See also City of Chicago v. Morales*, 527 U.S. 41, 54 (1999) ("[A]n individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is a part of our heritage, or the right to move to whatsoever place one's own inclination may direct[.]").

Second, it wasn't just a private merchant telling Sheets to hit the road. It was an armed police officer who formalized the year-long ban with a written citation carrying the threat of criminal arrest. "[C]ourts facing similar facts to this case—namely, a government threatening to enforce trespass ordinances during an event held on a traditional public forum—have not questioned state action." *McMahon v. City of Panama City Beach*, 180 F. Supp. 3d 1076, 1104 (N.D. Fla. 2016); *see also Stockstill v. City of Picayune*, No. 1:16CV4-LG-RHW, 2017 WL 3037431, at *2 (S.D. Miss. July 18, 2017).

Finally, and critical here, was the question of process. The touchstone of procedural due process is notice and a meaningful opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). According to Sheets, there was no vehicle to contest the trespass ticket. The City

6

corroborated that account by failing to identify any administrative avenue to challenge the warning. (Doc. 177 at 10-12.) Nor did the City offer any judicial proceedings Sheets could have used to clear his name. (*Id.*) Facing what appeared to be a total procedural void, the Court looked to the Eleventh Circuit's warning that unreviewable bans from public land carry an unacceptable risk of error. *See Catron*, 658 F.3d at 1267. So the procedural due process claim survived summary judgment.

The logic seemed tight, and on that record, it was. The City failed to raise the existence of any procedural remedy, leaving the Court to assume that an unreviewable trespass ticket was the end of the line. But in its supplemental brief, the City finally pulls the right lever. It argues that even if the City lacked a municipal appeals process, Florida's state courts provide an adequate safety net—specifically through writs of mandamus, certiorari, or declaratory relief. (Doc. 234 at 1-6.) The Court agrees.

As the Eleventh Circuit has explained "again and again," a procedural due process claim "can exist only if no adequate state remedies are available." *Flagship Lake Cnty. Dev. No. 5, LLC v. City of Mascotte, Fla.*, 559 F. App'x 811, 815 (11th Cir. 2014). "It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000). "This rule recognizes that the state must

have the opportunity to remedy the procedural failings of its subdivisions and agencies . . . before being subjected to a claim alleging a procedural due process violation." *Flagship Lake*, 559 F. App'x at 814.

Consequently, if a state provides a working legal mechanism to cure the procedural defect alleged, there is no federal constitutional violation. *See, e.g.*, *Kessler v. City of Key W.*, No. 21-11069, 2022 WL 590892, at *3 (11th Cir. Feb. 28, 2022). "The existence of a state judicial procedure to review, remand, and/or set aside agency decisions," whether used by the plaintiff or not, "is sufficient to satisfy the Fourteenth Amendment's Due Process Clause." *Dibbs v. Hillsborough Cnty., Fla.*, 67 F. Supp. 3d 1340, 1354 (M.D. Fla. 2014).

A lack of adequate state remedies or procedures is thus "an element to a procedural due process claim." *Dennis v. Brevard Cnty.*, No. 6:17-CV-1971-ORL-37-GJK, 2018 WL 1939490, at *4 (M.D. Fla. Mar. 23, 2018). But Sheets has not shown, or even argued, that Florida's state courts were unequipped to fix his grievance. And the City has now stepped up to show what processes were available. (*See* Doc. 234 at 3-6.) Had he wanted to challenge the officer's trespass ticket, Sheets could have pursued a writ of mandamus, a declaratory judgment, or a writ of certiorari in state court. *See, e.g.*, *Kessler*, 2022 WL 590892, at *3 n.3 (explaining that mandamus relief would be available to challenge a city's action to terminate a lease); *City of Miami v. State ex rel. Houston*, 102 So. 2d 176, 177 (Fla. Dist. Ct. App. 1958) (granting mandamus

relief from a decision by a city manager); *Parker v. Dep't of Highway Safety & Motor Vehicles*, 338 So. 3d 450, 452 (Fla. Dist. Ct. App. 2022) (writ of certiorari used to contest revocation of drivers license).

Despite the opportunity, Sheets filed nothing to dispute the availability or adequacy of these state procedures. And this Court is not in the business of inventing legal arguments for a litigant who chooses to stay silent. *See Herman v. Mr. Cooper Grp. Inc.,* No. 2:23-CV-948-JES-KCD, 2024 WL 3277021, at *1 (M.D. Fla. July 2, 2024) ("In our adversarial system, a claimant must present her case. It is not a court's job to conduct research to provide the proper support for [missing] arguments.").

### III. Conclusion

Federal courts do not sit as the first line of defense against local administrative errors when the state's own courts can handle the job. Because Florida law offers judicial remedies to contest the trespass warning, Sheets was required to use them before bringing a federal constitutional claim. His failure to do so, combined with his silence in response to the City's supplemental brief, means his procedural due process claim fails as a matter of law.

Accordingly, we will not proceed to trial. The Court reopens its summary judgment decision, amends its order to incorporate the analysis above, and grants judgment as a matter of law to the City on the Fourteenth Amendment

claim. There being no remaining claims, this case is **DISMISSED** in its entirety. The Clerk is directed to enter judgment in Defendants' favor, deny all pending motions, and close the case.

ORDERED in Fort Myers, Florida on July 6, 2026.


Kyle C. Dudek
United States District Judge